## McKinney and another vs. Jones and another.

*February 13 — May 10, 1882.*

PRACTICE: PARTIES PLAINTIFF: TRIAL: CONTINUANCE. *(1) When general guardian may sue in his own name. (2) Complaint construed; by whom suit brought ? (3) When married woman may sue alone. (8)Discretion of court as to admitting additional evidence; and as to continuance.*

SALE OF MINOR'S ESTATE. *(5) On whose petition sale ordered. (6) What irregularities do not avoid it.*

VENDOR AND PURCHASER. *(7) Waiver of vendor's breach of covenant. (9) Contract of sale foreclosed if vendor can make title at time of decree.*

1. While in general an action concerning the estate of a minor must be brought by or against the minor (who, under the statute, must be represented by his guardian *ad litem*), yet where the action is upon an express contract made by the guardian for the benefit of the ward, it may be by or against the guardian personally.

2. In the entitling of the summons and complaint, one of the parties plaintiff is named "E. G., heir-at-law of R. G., deceased, by her guardian W. B.;" but in the body of the complaint W. B. is spoken of as plaintiff. *Held,* that the action must be treated as brought by W. B. as a plaintiff.

3. In an action by a married woman, founded upon her contract to sell and convey land, the fact that her husband signed a writing at the foot of the contract declaring that he thereby joined therein with his wife, and bound himself to perform all acts necessary to convey all his interest as husband in said estate, does not show him to be a necessary party plaintiff, there being nothing in the pleadings or proof to show that the husband had any interest in the land.

4. Where the court improperly overruled a general demurrer to the complaint, but the fact whose omission rendered the complaint defective was supplied by defendant's evidence at the trial, the error was cured, and the complaint might have been amended before or after judgment, or the omission may be disregarded.

5. Under sec. 4, ch. 96, R. S. 1858, the court might proceed to license the sale of a minor's interest in land upon petition of the minor's mother (the surviving parent), she being included within the term "next friend" as used in that section.

6. Although the bond of the guardian appointed to make sale of a minor's interest in land (recited in the opinion) was not a compli-

ance with the statute (sec. 6, ch. 96, R. S. 1858), yet the sale, made in good faith, was not void for that reason, under the statute.

7. The vendor in a land contract failed to deliver to the vendees a certain instrument at the time fixed by her covenant; but the vendees accepted a subsequent delivery, made payments thereafter, and continued in possession of the land. *Held*, that they have waived the vendor's breach of covenant.

8. After the referee for trial has made his report, it is within the discretion of the court to admit additional testimony; and where such testimony was offered by one party, and the other objected to its admission, and asked for a continuance to enable him to produce testimony to meet it, but did not make an affidavit of surprise or show that he could probably controvert the additional evidence: *Held*, that there was no error in admitting the testimony and refusing a continuance.

9. As specific performance of a contract for the sale of land, in which time is not of the essence, will be decreed if the vendor is able to make a good title at any time before the decree is pronounced, so, where the vendor, before becoming able to make a good title, brings suit to foreclose the contract, equity may grant that relief if he can make such title at the time of the hearing — the costs being in the discretion of the court.

APPEAL from the Circuit Court for *Grant* County.

Action to foreclose a land contract. The plaintiff, *Antoinette McKinney*, and the defendants executed an· agreement under seal, dated October 7, 1868, in and by which *Mrs. McKinney* agreed to sell and the defendants to purchase certain lands therein described, for $2,100, of which sum $300 was made payable at the delivery of the agreement, and the balance in installments, the last of which was to become due in .1874. The defendants covenanted to pay the taxes, and the agreement gave them the right to the possession of the land until default on their part. Upon full payment being made, *Mrs. McKinney* covenanted to cause the land to be conveyed to the defendants free of incumbrance by a good and sufficient deed of warranty in fee simple.

The instrument also contains the following covenant of *Mrs. McKinney:* "The said party of the first part also agrees

and binds herself to have executed and delivered to the parties of the second part, on or before the 1st day of April, 1869, a contract of Esther E. Graham, infant child of Robert Graham, deceased, by her guardian duly authorized, binding herself to convey all her right, title and interest in said premises by deed in fee simple in the law at the same time the deed is made by the party of the first part as agreed."

In 1871 *Mrs. McKinney* petitioned the circuit court to license the plaintiff *Brindley* to sell the interest of Esther E. Graham in the land described in the above agreement with the defendants. Esther E. was a minor. She was the child of *Mrs. McKinney* and her former husband, Robert Graham, theretofore deceased, and *Brindley* was her general guardian. Her interest in the land in question was represented in the petition to be the undivided half thereof. The court thereupon appointed *Brindley* the special guardian of Esther E., and, upon his giving a bond, with sureties, in attempted compliance with the statute, granted the license prayed. The license is dated March 7, 1871. *Brindley* thereupon executed and delivered to the defendants, under his hand and seal, a contract dated March 10, 1871, as follows: "I, *William Brindley*, general and special guardian of Esther E. Graham, infant child of Robert Graham, deceased, in consideration of the covenants and agreements made and entered into between *Silas N. Jones* and *Elmer A. Jones* and *Antoinette McKinney* and A. M. McKinney, her husband, and on payment being made to me of the proportion of money belonging to my said ward on the sale of said land, which said contract bears date October 7, 1868, I will, on the fulfilment of said contract by said *S. N. Jones* and *E. A. Jones*, make and execute and deliver to said *S. N.* and *E. A. Jones* a guardian's deed of the land mentioned in said contract, of all the right, title and interest of my said ward, provided always the proportion of money belonging to my said ward is paid to me for the use and benefit of said ward."

*Brindley* made due report on oath of this contract to the circuit court, February 25, 1874, and the court ratified and confirmed the same by an order dated March 12, 1874, and directed *Brindley* to convey the land to the defendants upon their complying with the terms of their agreement. Payments are indorsed upon the contract as follows: October 17, 1868, $300; December 27, 1868, $300; April 9, 1869, $200; May 30, 1871, $100.

This action was brought to foreclose the defendants' interest in the lands under the above agreements. The complaint sets out both agreements, and alleges that no payments have been made thereon except $300, October 7, 1868, and the payments of $300, $200, and $100 indorsed as aforesaid under the dates, respectively, of December 27, 1868, April 9, 1869, and May 30, 1871. The license to *Brindley* to sell the interest of Esther E. in the land, and the readiness of the plaintiffs to execute the conveyances called for by the agreements, if the defendants will pay the unpaid balance of the agreed price, are alleged.

The defendants demurred to the complaint on the following grounds: " (1) Because the plaintiff Esther E. Graham has not legal capacity to sue by her general guardian, *William Brindley*. (2) Because there is a defect of parties plaintiff in that the infant, Esther E. Graham, should have been properly made a party plaintiff, as should also Alfred M. McKinney. (3) Because several causes of action have been improperly united, the complaint showing, if any, separate causes of action in favor of the plaintiffs *Antoinette* and Esther E. (4) Because the complaint does not state facts sufficient to constitute a cause of action." The demurrer was overruled. Thereupon the defendant answered the complaint as follows: " That, except as hereinafter admitted, no allegation thereof is true. They admit the making of the contract mentioned in the complaint, alleged to have been signed by them, and that they made the payments

thereon mentioned in the complaint. And for a further defense they allege that they also paid on said contract $300 on October 17, 1868. And for a further defense they allege that the contract in the said contract agreed to be executed and delivered from Esther E. Graham, by her guardian duly authorized, to the defendants on or before April 1, 1869, as mentioned in the complaint, has never been executed or delivered to them; that on the execution and delivery of such contract so agreed to be executed and delivered, they are ready and willing to pay the full amount due upon the said contract signed by them according to the terms thereof."

The cause was tried by the court, and the findings of fact and conclusion of law are as follows: "The court doth find that there is due to the plaintiff the sum of $1,200 principal, and that there has not been paid on said contract by said defendants the $300 claimed to be paid on the 17th day of October, 1868; and that said defendants have paid only the sum of $900; and that the plaintiffs are entitled to the relief demanded in the complaint."

Some other facts essential to an understanding of the questions determined by the court, are stated in the opinion. The defendants appealed from a judgment against them entered in accordance with the above conclusion of law.

The cause was submitted on the brief of *Bushnell, Clark & Watkins,* for the appellants, and that of *L. J. Woolley,* their attorney, with *Alexander Provis,* of counsel, for the respondents.

The following opinion was filed March 14, 1882:

LYON, J. I. The questions as to who are the proper parties plaintiff in the action, and as to the sufficiency of the complaint, are raised by the demurrer, and the appeal presents them for determination. *Armstrong v. Gibson,* 31 Wis., 61; *Tronson v. Union Lumbering Co.,* 38 Wis., 202; R. S., 799, sec. 3070.

1. It is a general rule of law that an action concerning the estate of a minor must be by or against the minor, who, under our statute (R. S., 716, sec. 2613), must be represented by a guardian *ad litem*. But to this rule there are many exceptions. 3 Wait's Actions & Defenses, 573. We understand one of these exceptions is where the action is upon an express contract made by the guardian for the benefit of the ward. Such an action may, it seems, be brought by or against the guardian personally. *Thomas v. Bennett*, 56 Barb., 197; *Stevenson v. Bruce*, 10 Ind., 397.

Some of the cases go upon the principle that the guardian in such a case is the trustee of an express trust, and may sue without joining his ward with him. Whether this is the true reason of the rule it is not necessary here to determine, as the rule may be upheld on other grounds.

In the entitling of the summons and complaint in this action the plaintiffs are named and described thus: "*Antoinette McKinney*, late widow of Robert, and heir-at-law of Eldora Graham, deceased; and Esther E. Graham, heir-at-law of Robert Graham, deceased, by her guardian, *William Brindley*." In form, the minor, Esther E., is here named as a plaintiff, and her guardian is not; but in the body of the complaint *Mr. Brindley* is referred to as a plaintiff. For example, it is alleged therein that "the plaintiff *William Brindley* was duly licensed" to sell the land, etc. A careful examination has satisfied us that it is the complaint of *Mrs. McKinney* and *Mr. Brindley*, and not of the former and Esther E., notwithstanding the form in which it is entitled. Looking at substance rather than form, we must hold that the guardian, and not the minor, is one of the plaintiffs; and, in that respect, there is no defect of parties plaintiff.

It is further claimed that the husband of *Mrs. McKinney* should have been a party to the action, because he signed a writing at the foot of the contract between his wife and the defendants, as follows: "I hereby join in the above contract

with *Antoinette McKinney*, my wife, and bind myself to do and perform all the acts necessary to convey all my interest as husband in said estate." Presumably the interest of *Mrs. McKinney* in the land described in the contract was her separate estate. There is nothing in the pleadings or proofs tending to show that her husband had any interest whatever in it. Manifestly, under these circumstances, he is not a necessary party to the action.

2. The complaint fails to allege that the agreement of the special guardian for the sale and conveyance of his ward's interest in the land to the defendants was confirmed by the court. Until such confirmation the special guardian could not convey (R. S. 1858, ch. 96, sec. 10), and of course the action could not be maintained. For this defect in the complaint the demurrer thereto should have been sustained, on the ground that the complaint fails to state a cause of action.

But the defendants introduced in evidence the whole record of the proceedings in the circuit court upon the application for license to sell the land, and those proceedings show that the guardian's agreement with the defendants was duly reported to and confirmed by the court. This proof supplied the omission in the complaint. Under a familiar rule often acted upon by this court, the complaint may be amended, as well after as before judgment, to correspond with the proofs, or the omission may be disregarded. *Flanders v. Cottrell*, 36 Wis., 564; *Matthews v. Baraboo*, 39 Wis., 674; *Cody v. Bemis*, 40 Wis., 666; *Weston v. McMillan*, 42 Wis., 567; *Russell v. Loomis*, 43 Wis., 545; *Aschermann v. Brewing Co.*, 45 Wis., 262.

It follows that although the demurrer was erroneously overruled as to one ground thereof, the judgment should not be reversed for that reason, because the proofs introduced by the defendants supplied the defect in the complaint, and thereupon the error ceased to prejudice or injure them.

II. Two irregularities in the proceeding to obtain license for the guardian to sell the interest of the minor in the land in question are alleged, and the learned counsel for the defendants claim that they vitiate the whole proceeding.

1. The petitioner for such license is the mother of the minor. It is urged that the statute does not authorize the court to proceed on her petition. The statute which iuled the proceeding (R. S. 1858, ch. 96, sec. 4), is as follows: "Any infant seized of any real estate, or entitled for any term for years in any lands, may, by his next friend, or by his guardian, apply to the circuit court for the sale or disposition of his property in the manner hereinafter directed." The corresponding section in the present revision (section 3504), provides that application for the license may be made by the general guardian of the infant, or any relative or other person, in behalf of the infant. In their note to this section the revisers say that "its directions are in accordance with the practice which has heretofore obtained in such cases." We think the term "next friend," as used in section 4, is broad enough to include the mother of the minor. It is, or rather was, by the common law the legal designation of the person by whom an infant brought and prosecuted an action either at law or in equity. When these proceedings were had such person was, and now is, designated a guardian *ad litem*. R. S. 1858, ch. 122, secs. 16, 17; R. S., secs. 2613, 2614. There was no statutory provision for the appointment of a next friend in a proceeding in the circuit court to obtain license to sell the land of an infant, and there is none now.

The statute evidently used the term, not as requiring the petitioner for such license to be one who had been specially appointed by some court to represent the infant, but rather to include any person, particularly a near relative of the infant, who should see fit to make the application. This was the view of the revisers, and was undoubtedly the view ac-

cepted and acted upon by the bar and courts of the state before the late revision.

We conclude that the petition was sufficient to set the proceeding in motion.

2. Section 6, ch. 96, R. S. 1858, required the special guardian to give a bond to the infant "conditioned for the faithful performance of the trust reposed, for paying over, investing and accounting for all moneys which shall be received by such guardians, according to the order of any court having authority to give directions in the premises, and for the observance of the orders and directions of the court in relation to the said trust." The special guardian gave a bond conditioned as follows: "Now, if the said *William Brindley* shall sell the said estate of said minor, and a true report make of the said sale, and the amount received therefor, and shall faithfully keep the proceeds of such sale, and loan the same at interest, or invest the same as shall be deemed best for the interest of said minor, and not squander any of the proceeds of such sale, then this obligation to be void, otherwise to be and remain in full force, virtue and effect."

If it was the intention of the person who drew that bond to ignore the statute and banish from the instrument everything the statute required should be inserted in it, his success in the accomplishment of his purpose challenges admiration. If the jurisdiction of the court to grant the license to sell depended upon the giving of the bond required by the statute, the license could not be upheld. But we do not think the jurisdiction of the court so depends. The statute does not in terms, or by necessary implication, enact that the failure to give a bond in the form prescribed shall invalidate the license, or that the giving of it is a condition precedent to granting the license. The fair implication of the statute is the reverse of that, for it provided that "all sales, leases and dispositions and conveyances made in good faith by the guardian, in pursuance of such orders, when so confirmed, shall be valid and

effectual, as if made by such infant when of full age." R. S. 1858, ch. 96, sec. 12. .We suppose the bond given is valid as a voluntary bond, and may be enforced by action in the event of a breach of any of its conditions. This proposition, however, is not in the case.

Our conclusion is, that the license to *Brindley*, the special guardian, to sell the land of his ward is valid.

III. The contract between the plaintiff *Mrs. McKinney* and the defendants, for the sale and purchase of the land, called for the delivery to them on or before April 1, 1869, of the contract of the infant by her guardian duly authorized to join in the conveyance. The contract was not so delivered until about March 10, 1871. This breach of the covenant does not help the case of the defendants, for they accepted the contract without objection, have since made two payments of purchase money, and presumably still retain possession of the land. They have thus clearly waived any right to declare the contract forfeited for such breach.

IV. The testimony was taken before a referee, who reported it to the court. On the hearing in court the judge permitted two witnesses, called by the plaintiffs, to give testimony in the case. Their testimony is material. The defendants' counsel objected to the examination of these witnesses, and applied for a continuance to enable them to produce testimony to meet the testimony so received. But no affidavit of surprise was submitted, and no showing was made that the defendants could probably controvert or weaken the force of such additional testimony. The motion was for a continuance " to enable the defendants to be present and produce testimony to meet and explain the oral testimony now introduced by the plaintiffs." Clearly it was in the discretion of the court to admit the additional testimony, and the defendants showed no sufficient cause for a continuance.

V. The foregoing remarks dispose of all the questions in the case which it is deemed necessary to notice, save one,

which will now be considered. The question chiefly litigated on the trial related to a payment of $300 on the contract, alleged by the defendants and denied by the plaintiffs. It was admitted that $300 was paid at the execution of the contract. The contention of the plaintiffs was that the same was paid at the date of the contract — October 7, 1868,— and indorsed thereon as paid on that day; that the date of the indorsement has been since changed by some person, without their consent or knowledge, to October 17th; and that no payment was made at the latter date. The contention of the defendants is that the first $300 paid was not indorsed upon the contract, and that at the date last aforesaid they paid thereon an additional $300. It will serve no useful purpose to state the testimony on this question. It is in direct conflict, and so nearly balanced that we are unable to say that there is a clear preponderance against the finding of the court. Had the court found the other way we should probably be compelled to say the same thing. The finding on this litigated question was for the plaintiffs, and, under well settled rules, we cannot disturb it.

*By the Court.*— The judgment of the circuit court is affirmed.

The appellants moved for a rehearing; and the following opinion was filed May 10, 1882:

LYON, J. The argument of the learned counsel for the defendants on the motion for a rehearing of this cause calls our attention to the fact that the order confirming the agreement by the plaintiff *Brindley*, the special guardian, for a sale of the land of his ward to the defendants, was made over a year after the action was commenced. This fact was overlooked when the cause was decided by this court, and is not mentioned in the opinion or in the arguments of counsel. We think, however, that the omission is immaterial, and that the

judgment is right, notwithstanding the action was brought before the plaintiffs could make a good title to the premises. It seems to be settled that a court of equity will decree specific performance of a contract for the sale of land in which time is not of the essence of the contract, if the vendor is able to make a good title at any time before the decree is pronounced. *Hepburn v. Dunlop*, 1 Wheat., 179, and cases cited in note; Story's Eq. Jur., § 777, and cases cited. No good reason is perceived why the same rule should not apply to an action to foreclose the interest of the vendee in such an agreement who has failed to pay the consideration for the land as agreed. We are of the opinion that it is within the power of a court of equity to grant relief in either case if the vendor can make a good title at the hearing, although he may not have been able to do so when the action was commenced. This inability may affect the question of costs, but that rests in the discretion of the court.

The circuit court having granted relief, and having exercised its discretion as to the costs, there is no ground for disturbing its judgment.

*By the Court.*— The motion for a rehearing is denied.