**Ruben DARIO SANCHEZ, Defendant, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 5304.

United States Court of Appeals First Circuit.

May 19, 1958

Santos P. Amadeo, Rio Piedros, P. R., and Gerardo Ortiz del Rivero, San Juan, P. R., on brief for appellant.

Ruben Rodriguez-Antongiorgi, U. S. Atty., and Francisco A. Gil, Jr., Asst.

U. S. Atty., San Juan, P. R., on brief for appellee.

Juan B. Fernandez Badillo, Atty. Gen., Commonwealth of Puerto Rico, Arturo Estrella, Asst. Atty. Gen., Abe Fortas, Washington, D. C., and Jose Trias Monge, San Juan, P. R., on brief for the Commonwealth of Puerto Rico as amicus curiae.

Before MAGRUDER, Chief Judge, and WOODBURY and STALEY, Circuit Judges.

MAGRUDER, Chief Judge.

The appeal is from an order of the United States District Court for the District of Puerto Rico entered August 16, 1957, denying a motion under 28 U.S.C. § 2255 to vacate four separate judgments of conviction and sentence imposed for various narcotics violations under the Narcotic Drugs Import and Export Act, 21 U.S.C.A. § 171 et seq. and under the Marihuana Tax Act as now embodied in the Federal Revenue Code, 26 U.S.C. § 2590 et seq.

At our session in San Juan on February 7, 1958, the case was submitted to us without oral argument on the record and briefs and on the arguments in Moreno Rios v. United States, 1 Cir., 256 F.2d 68. The decision of this court handed down today in the Moreno case is controlling in the case at bar so far as concerns the applicability to the Commonwealth of Puerto Rico of the provisions of the Federal Narcotic Drugs Import and Export Act. Certain further comments are necessary because of additional issues present in this case.

As to the Marihuana Act, this was passed by Congress under the taxing power. If applicable to Puerto Rico, it applies there in the same way it applies to the States of the Union. But under the guise of exercising the taxing power, the Act makes criminal certain transactions in marihuana entirely local in nature without reference to whether the marihuana had been previously imported. Some day we may have to decide whether such an exercise of the taxing power by the Congress is inconsistent with the local autonomy vested in the Commonwealth Government by Public Law 600 (64 Stat. 319, 48 U.S.C.A. § 731b et seq.) and by the ensuing Constitution adopted by the people of Puerto Rico. Cf. United States v. Figueroa Rios, D.C.D.P.R.1956, 140 F.Supp. 376; Trigo Bros. Packing Corp. v. Davis, D.C.D.P.R.1958, 159 F. Supp. 841. We do not have that problem here, because Puerto Rico has clearly manifested consent to this exercise of power.

In United States v. Marquez Estrada, an unreported opinion entered December 21, 1956, the court below had before it this question of the applicability of the Marihuana Act to the Commonwealth, and it found consent in the referendum by the people of Puerto Rico in which they accepted the terms of the "compact" offered to them by Public Law 600. As we pointed out in the Moreno case, that "compact" left in force as a term of the Puerto Rican Federal Relations Act a provision of § 9 of the Organic Act of 1917, as amended, which reads in part as follows: "The statutory laws of the United States not locally inapplicable, except as hereinbefore or hereinafter otherwise provided, shall have the same force and effect in Puerto Rico as in the United States, except the internal revenue laws other than those contained in the Philippine Trade Act of 1946". (48 U.S.C.A. § 734, 60 Stat. 158) The argument is that, since the Marihuana Act undoubtedly applied to Puerto Rico prior to the creation of the Commonwealth, and since its application in Puerto Rico is the same as its application in the states, the people of Puerto Rico by accepting the terms of the compact have in effect ratified the future application of the Marihuana Act to Puerto Rico. But it may be urged that § 9 of the Organic Act, as thus continued in effect, contained an exception to the "internal revenue laws"; and therefore that the people of Puerto Rico by ratifying the "compact" have not thereby consented to the purely

local application of this taxing act. To this argument an answer is possible that the Marihuana Act, as embodied in the Internal Revenue Code, is only in form an internal revenue act, but in greater part is a regulatory measure, with the raising of revenue only subordinate and incidental. See United States v. Sanchez, 1950, 340 U.S. 42, 44, 71 S.Ct. 108, 95 L.Ed. 47.

But we do not need to rely upon the foregoing line of thought, for the consent of Puerto Rico to the local application of the Marihuana Act has otherwise been unequivocally manifested.

■ As we pointed out in the Moreno case, from the time of its original enactment in 1937 the Congress had the clear intention to apply the Marihuana Tax Act to Puerto Rico. This intention persisted when the Congress in 1939 incorporated the provisions of the Marihuana Tax Act into the Internal Revenue Code. And even when the Congress came to revise the Revenue Code in 1954, 26 U.S.C. § 4741 et seq., which was after the Commonwealth of Puerto Rico came into being, it is clear that the Congress expressed a definite intention that the Act should continue to be applicable in that area. Pursuant to § 2603 of the Internal Revenue Code (53 Stat. 283), the administration of the Marihuana Act in Puerto Rico, including the collection of the special taxes and the issuance of the order forms, is delegated to the appropriate internal revenue officer of that government. The Puerto Rican Government undertook the execution of this task of administration, and there has been complete liaison and cooperation between the federal and Puerto Rican officers having to do with narcotics enforcement legislation. No conflict has arisen as between the administration of the Marihuana Tax Act of 1937, where whatever revenue is raised goes to the Puerto Rican Treasury, and the Puerto Rican Uniform Narcotic Drug Act. 24 L.P.R.A. §§ 951–972. Nor did this cooperation come to an end when Puerto Rico became a commonwealth. In fact, beginning with the first legislative assembly, under the Commonwealth, Puerto Rico has continued to appropriate money for the operation of the Narcotics Bureau in the Puerto Rican Treasury Department.

■■ One of the grounds under 28 U.S.C. § 2255 for setting aside three of the four convictions was that the court made only a "pro forma" appointment of counsel, whose representation of the accused was so incompetent and ineffective as to amount to a denial of counsel to which the accused was entitled under the Sixth Amendment. This accusation was not involved in the first of these cases, where the defendant had pleaded guilty. The record shows that the court originally appointed Benjamin Ortiz, a recently resigned member of the Supreme Court of Puerto Rico, to represent the indigent accused, and Ortiz was present at the arraignment. Later, however, because of the defendant's dissatisfaction with Ortiz, he was replaced by Alvaro Calderon, Esq., in two of the cases, and by Luis F. Cuyar, Esq., in the third. At the trial these counsel engaged in vigorous cross-examination of the government witnesses, though probably for prudential reasons they did not put the defendant on the stand. At the conclusion of the consolidated trial the judge thanked counsel for their intelligent efforts to make the best defense that in the circumstances they could make.

These attacks upon the competency of counsel are not received with much sympathy by the courts. See Walker v. United States, 7 Cir., 1955, 218 F.2d 80; Ford v. United States, 6 Cir., 1956, 234 F.2d 835, 837; United States ex rel. Swaggerty v. Knoch, 7 Cir., 1957, 245 F.2d 229; United States v. Miller, 2 Cir., 254 F.2d 523. Certainly the judge who presided at the trial, and thus was perfectly well aware of the services rendered by court-appointed counsel, had no obligation to call a hearing on the defendant's § 2255 motion, in order to waste time while the defendant undertook to make specific his vague general allegations of counsel's inadequacy. On this branch of

the case we close with a quotation from Adams v. United States, 1955, 95 U.S. App.D.C. 354, 222 F.2d 45, at page 48:

"For these reasons, we cannot say the District Court erred in denying without a hearing appellant's motion under Section 2255. There was no legal point which required discussion or an explicit ruling; there was no genuine issue of material fact which required an evidentiary hearing. Summary disposition of futile and groundless motions is permissible under the terms of the statute, when ' "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief" '. [Morales v. United States, 1 Cir., 1951, 187 F.2d 518, 519.] We are satisfied from our own examination of 'the motion and the files and records of the case', as placed before us, that this statutory provision was applicable here. It seems evident that the District Court, though it does not expressly state so in the record, made a like examination and came to a like conclusion. Cf. Birtch v. United States, 4 Cir., 1949, 173 F.2d 316, certiorari denied 337 U.S. 944, 69 S.Ct. 1500, 93 L.Ed. 1747; Morales v. United States, supra; Garcia v. United States, 9 Cir., 1952, 197 F.2d 687; United States v. Fleenor, 7 Cir., 1949, 177 F.2d 482. It would have been better practice for the District Judge to have made a statement on the record to the effect that the motion and the files and records of the case conclusively showed that the prisoner was entitled to no relief under Section 2255: such a statement, made on the trial court's responsibility and conscience as a judge, would have advised this court on the record that the trial court in denying the motion had in mind the statutory standard. But we see no need to remand for that purpose."

A judgment will be entered affirming the order of the District Court.