Fred **STEIN**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 16309.

United States Court of Appeals
Ninth Circuit.

Nov. 16, 1959.

Rehearing Denied Dec. 29, 1959.

William H. Neblett, E. W. Miller, Los Angeles, Cal., for appellant.

Gerald H. Gottleib, Reseda, Cal., A. L. Wirin, Los Angeles, Cal., amicus curiae.

Laughlin E. Waters, U. S. Atty., Leila F. Bulgrin and Robert John Jensen, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before STEPHENS, MARTIN and ORR, Circuit Judges.

ORR, Circuit Judge.

The principal question for determination in this case is whether appellant Stein at the trial in which he was convicted received the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution. During the course of preliminaries to the actual trial, at least three lawyers of his own choosing appeared—a Mr. Weiss, a Mr. Sherman and a Mr. Sweeney. Of the three, Mr. Sweeney seems to have made more court appearances. Three continuances were granted. The last continuance was for a period from August 12th to September 16th. Mr. Sweeney was instrumental in securing the third continuance. On the day last set for trial, appellant and his counsel Sweeney appeared. They asked for a fourth continuance on the following grounds: that counsel was unprepared since he had learned only three days earlier that the trial would be held at such time; that there was a variance between the trial memorandum submitted by the government and the indictment; and that counsel was not in the right state of mind to adequately defend appellant because of certain charges which had recently been made against him. The court in the exercise of its discretion denied the motion for a fourth continuance.

The first ground is without merit. Mr. Sweeney was present at the time of the setting of the case when the third continuance was granted and one month elapsed between the third continuance and the time of trial. In disposing of the second ground, the trial court ruled that if there was a variance between trial memorandum and the indictment the proper remedy was to object when the government sought to introduce evidence on the points in question. We think the court was correct in this ruling. The ground most strenuously urged was the assertion by Mr. Sweeney that he was not mentally and physically able to adequately defend the appellant. In this connection, we quote the court proceedings in note 1.[1] The alleged mental and

---

[1] "Mr. Sweeney: * * * Thirdly, there is a question of the recent publicity which I have received in this affair over on the state side by my arrest on this—what was it, bribery incident—that was widely covered by radio, television and the newspapers, having been carried on the front page of the newspapers and being dis-

physical disability was asserted to be the result of publicity Mr. Sweeney had received in connection with his arrest on a narcotics charge. We find no abuse of discretion by the court in refusing the fourth application for a continuance. As to the question of whether Mr. Sweeney was in fact in a mental and physical condition to represent appellant, we as a reviewing court are privileged to view the question in the light of events subsequent to the ruling, which will be more fully developed later. After the denial of the continuance, the court proceeded to empanel the jury. Thereafter it was brought to the attention of the court that Mr. Weiss was the attorney of record for appellant and, understandably, it concerned itself with getting the record straightened out.[2] Appellants

cussed over television as well as over the radio.

"Mr. Stein came to me and asked me, did I feel in light of all that had recently happened, was I in the proper mental attitude to represent him, and I informed him that I was not.

"I felt that because of the nature of this kind of charge and the publicity that this case might get, it might materially affect any defense that I might have as to my action if I were to be connected in any way to any sort of situation like that.

"The Court: That occurred several weeks ago?

"Mr. Sweeney: It occurred two weeks ago.

"The Court: It occurred long enough ago that some change in counsel should have been made by this time.

"What is your position concerning this, Mrs. Bulgrin?

"Mrs. Bulgrin: Your Honor, we strenuously urge that the case go to trial. It has been pending a long time.

"The Court: It has been pending since March 4th?

"Mrs. Bulgrin: Yes.

"The Court: This will be the fourth continuance. * * * I don't think there is sufficient grounds for a continuance. We will proceed to trial. * * * It has been pending since March 4th and must be disposed of and this is the fourth continuance requested. * * *

"Mr. Sweeney: I would like the record to indicate that I am totally both mentally and physically unable to go to trial."

2. In order that the court's disposition of this matter be fully understood, a copy of the proceedings follows:

"The Court: * * * Is Mr. Paul Sweeney your counsel, Mr. Stein?

"The Defendant: Your Honor, I would like to get another attorney.

"The Court: Has he been your attorney?

"The Defendant: Yes, he has appeared for me here.

"The Court: Has he been your attorney in this case?

"The Defendant: No, he has not.

"The Court: Was he your attorney on March 10th?

"The Defendant: He has made the appearances here.

"The Court: Was he your attorney? Did you authorize him to appear for you?

"The Defendant: Yes.
* * * * *
"The Court: Is Mr. Harry Weiss still your lawyer?

"The Defendant: No.

"The Court: Who is your lawyer?

"The Defendant: Well, Mr. Weiss was my attorney up until when Mr. Sweeney made his first appearance and Mr. Weiss stepped out.

"The Court: Up until Mr. Sweeney appeared?

"The Defendant: Yes, sir.
* * * * *
"The Court: Was Mr. Sweeney your attorney then?

"The Defendant: Yes.

"The Court: Have you since discharged Mr. Sweeney?

"The Defendant: We discussed it.

"The Court: Have you discharged him?

"The Defendant: No.
* * * * *
"The Court: Have you told Mr. Sweeney all the facts in this case?

"The Defendant: Yes, sir.

"The Court: He has advised you of the law and as to your rights?

"The Defendant: Yes.

"The Court: I have here an appearance designation of counsel. Now do you refuse to sign it?

"The Defendant: (Pause).

"The Court: Do you refuse to sign designating Mr. Sweeney as your lawyer?

"The Defendant: Yes.

"The Court: You do or do not?

"The Defendant: I will sign it.

"The Court: This is dated March 10th.

"Mr. Sweeney: I don't know whether you should consult someone else or not.

"(Conference between counsel and the defendant.)

"Did you make a telephone call this afternoon to try to get other counsel?

claim coercion. An analysis of what occurred convinces us that such a contention cannot be sustained. We are impressed by the evident fairness of the court in declaring a recess so that appellant and Mr. Sweeney could confer; its offer to have Mr. Weiss produced in court; and finally the statements of Mr. Sweeney after he and appellant had conferred privately. Sweeney stated to the court, among other things, " * * * I am going to represent this defendant * * * I think Mr. Stein is satisfied with my services thus far and is con-

"The Defendant: Yes.

"Mr. Sweeney: Did you get him?

"The Defendant: No.

"Mr. Sweeney: There is no doubt in my mind but that Harry Weiss and myself were representing him at all those times. Now when I talked about representation, that was since September, whenever the publicity came out about me, and then I called him and asked him—well, he called me and asked, did I want to continue, and that is the only time the matter of attorneys has come up. At all times though I did think that I was representing him along with the offices of Harry Weiss.

"The Court: Who is your lawyer?

"The Defendant: I talked to Mr. Weiss.

"The Court: No, who is your lawyer, not who you talked to. Who is your lawyer?

"Mr. Sweeney: I am one of them.

"The Defendant: Mr. Sweeney.

"The Court: Mr. Sweeney is your lawyer?

"The Defendant: Yes.

"The Court: Very well. You can sit down there at the table and talk to Mr. Sweeney. I will declare a few moments' recess, before you put any witness on the stand.

"Mrs. Bulgrin: Yes, your Honor.

"The Court: You make up your mind whether or not Mr. Sweeney is your lawyer.

\* \* \* \* \*

"(The following proceedings were resumed in open court:)

\* \* \* \* \*

"The Court: Is Harry Weiss one of your lawyers?

"The Defendant: Yes, sir.

"The Court: I will declare a recess. The clerk will call Mr. Weiss and get him over here, wherever he is.

"The Defendant: I talked to Mr. Weiss—

"The Court: Otherwise I will send a United States Marshal for him.

"Is there a United States Marshal present?

"The Clerk: Yes, your Honor.

"Mr. Sweeney: Let me make a call to Mr. Weiss, your Honor. I am going to

represent this defendant and I am also going to call Mr. Weiss and find out just what his position is in the matter.

"The Court: Mr. Weiss had better get over here. This is not the first time that this has happened, and I sort of have a feeling that Mr. Weiss is playing horse with the courts.

"Mr. Sweeney: No, your Honor. In all fairness to Mr. Weiss, he advised me Friday that he did not think that he was going to appear in this matter and asked me what I was going to do in the matter, and at that time I advised Mr. Weiss that I was going to seek a continuance in order for Mr. Stein to get another attorney in light of my feeling about this thing, if for no other reason. I think Mr. Stein has been satisfied with my services thus far and is confident to have me continue. But it was just my personal feeling in light of my own situation that just made me wonder whether I would be best at this particular time to try what I think was a very important thing in his life with my own troubles as they are.

"The Court: It is up to the defendant to make up his mind.

"Mr. Sweeney: That I know. I don't think Mr. Weiss is in any way trying to avoid this.

"The Court: We went through one case, not before me but before another judge, where Mr. Weiss' office represented a client, they appeared repeatedly before three different judges, they took six days to try it, the defendant was convicted and when it came time for sentence the defendant got up and said he was not his lawyer at all and had never retained him.

"I want to know now from Mr. Stein who your lawyer is.

"The Defendant: Mr. Sweeney.

"The Court: Mr. Sweeney is your lawyer?

"The Defendant: Yes, sir.

"The Court: Very well. \* \* \* Do you wish Mr. Sweeney to be substituted in place and stead of Harry Weiss?

"The Defendant: Yes, sir.

"The Court: Very well. The motion is granted and Mr. Sweeney is substituted as sole counsel for the defendant Stein. \* \* \* "

fident to have me continue." The court then questioned appellant:

"* * * I want to know from Mr. Stein who your lawyer is.

"The Defendant: Mr. Sweeney.

"The Court: Mr. Sweeney is your lawyer?

"The Defendant: Yes, sir."

We are left with the conviction that the sole purpose of injecting the alleged inability of Mr. Sweeney to conduct the trial was to secure a continuance.

The American Civil Liberties Union of Southern California has been permitted to file an amicus curiae brief. They make the contention that a conflict of interest existed between Mr. Sweeney and his client. If such were the fact, under the holding of the Supreme Court of the United States in Glasser v. United States, 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, we would not search the record to determine the adequacy of the assistance of counsel received by appellant. But we are unable to find a conflict of interest. An examination of the cases discloses quite a different situation than we have here. See Glasser v. United States, supra, (one lawyer represented co-defendants whose interests conflicted); Craig v. United States, 6 Cir., 1954, 217 F.2d 355 (company counsel represented an employee and his employer whose interests conflicted); District of Columbia v. Scott, 1954, 94 U.S.App.D.C. 227, 214 F.2d 860 (defense lawyer on other occasions had represented witnesses who testified against defendant); Berry v. Gray, D.C.Ky.1957, 155 F.Supp. 494 (defense lawyer worked part time for prosecution in other cases). The somewhat eloquent argument of amicus curiae to our minds is more a further argument as to the alleged incapacity of Sweeney than a disclosure of adverse interest. No adverse interest appearing, we may turn to the record to determine the kind of defense appellant did get. Thomas v. United States, 9 Cir., 1958, 252 F.2d 182. See also Sanchez v. United States, 1 Cir., 1958, 256 F.2d 73; United States v. Yager, 7 Cir., 1955, 220

F.2d 795. Our consideration of the record leaves us with the same view expressed by the trial court, that "* * * I know of nothing that any other or additional counsel could have done that you, Mr. Sweeney, didn't do in the protection of this defendant's rights. The case was tried skillfully and adroitly on behalf of defendant by you * * *" We ask the question, what defenses were open to a defendant where the witnesses were fellow law breakers other than to attack their credibility? Mr. Sweeney did this by an able cross-examination. In this examination he exhibited no terror. He was alert and prompt with objections and forceful in argument. Our experience as trial judges for many years, from which we cannot disassociate ourselves, convinces us that appellant received a better than average defense and that his interests were fully and expertly protected. Any misapprehensions that Mr. Sweeney may have had along these lines were unfounded.

Appellant attempts to point out certain instances in which Mr. Sweeney was remiss in his duty. Appellant says Sweeney must have been ignorant of Section 3500(b) of Title 18 U.S.C., or the case of Jencks v. United States., 1957, 353 U.S. 657, 77 S.Ct. 1007, 1 L. Ed.2d 1103, because he did not demand the production of government witnesses' pretrial statements. If he was ignorant of the right to make such a demand, it could not be because of his alleged frame of mind because of a pending indictment. It would have been due to a gap in his general education, which is not urged. Nor is it apparent. The presumption we indulge is that Sweeney was aware of the section but that the merits of his client's case did not require production of such statements. Appellant set up as a defense that he was in New York City at the time one of the offenses charged in the indictment is alleged to have taken place. Mr. Sweeney offered in evidence a letter from the manager of the hotel in which appellant stayed in New York only to corroborate testimony given by appellant's wife and daughter.

**900**

The offer of the letter was rejected. Appellant now claims that had Sweeney been alert to his duty he would have foreseen the incompetency of the letter and made arrangements for a deposition. The taking of a deposition was completely unnecessary, however, as the original registration card, the best evidence, was in evidence.

It is said the evidence is insufficient to sustain the conviction. The credibility of the witnesses was for the jury. If they believed them, which they evidently did, the evidence is overwhelming. We encounter a tendency, not so much urged here, in cases where witnesses are of the same ilk as a defendant to charge the jury with a dereliction of duty in that they convict because of the characters involved. We are in entire disagreement with such a theory. We find that juries take their duties seriously and as a rule do a good job.

Judgment affirmed.