ANGUS, Plaintiff in error, v. STATE, Defendant in error.

No. *75–846–CR. Argued February 1, 1977.—Decided March 1, 1977.*
(Also reported in 251 N. W. 2d 28.)

For the plaintiff in error the cause was argued by *Craig E. Miller,* assistant state public defender, with whom on the brief was *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was argued by *Maryann S. Calef,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

HANLEY, J. Two issues are presented on this appeal:

1. Did the trial judge abuse his discretion by denying the defendant's request for a continuance?

2. Was it error to refuse cross-examination of the complainant regarding her prior sexual conduct?

*Denial of Continuance*

The defendant contends the trial judge committed reversible error by denying his request for a continuance after the defense received notice on the day of the trial that his daughter intended at trial to testify differently than she did at the preliminary hearing as to the time the offense occurred.

At the preliminary hearing, the complainant testified that the act of incest took place shortly after midnight on August 2–3, 1974. She stated she had spent the day of August 2nd with her father, first meeting with him at 11:00 a.m., and that later in the evening, after going with him to a bar at about 8:00 p.m., she was taken by her father to a parking lot on Jones Island in Milwaukee where the act occurred. Upon cross-examination, however, the complainant stated she was not positive of the date on which the offense occurred, but that it was in the beginning of August.

Subsequent to the preliminary hearing, the defendant filed a notice of alibi, pursuant to sec. 971.23(8), Stats., which alibi was directed toward the evening hours of August 2, 1974. The record shows the defendant had several witnesses available to testify in support of this alibi.

On the day of trial, the complainant notified the prosecution that her testimony at trial would be that the act occurred shortly after midnight on August 1–2, 1974, after having been with her father during the day of August 1st. The prosecution immediately notified defense counsel, who then sought a continuance.

In requesting the continuance, counsel for the defendant stated the defense had been prepared upon the belief, held in reliance upon conferences with the prosecution and the daughter's testimony at the preliminary hearing,

that the daughter would testify that the crime occurred shortly past midnight on August 2nd–3rd. Defense counsel further stated, after having conferred with the defendant and the alibi witnesses assembled to testify as to the evening of August 2nd, that the defendant recalled being at a particular home during the night of August 1st, that none of the alibi witnesses then present, except one, would have also been there, and that the one witness present who might have been there could not recall the evening of August 1st. A continuance was requested to investigate the evening of August 1st by talking to those persons, not present, at whose home the defendant recalled being on the evening of August 1st.

The trial judge declined the request for a continuance, noting that the information stated the date of the offense to be August 2, 1974, which would be consistent with the testimony that it occurred shortly after midnight in the early morning hours of August 2nd, the version the daughter now indicated she would give at the trial. The trial judge also, however, stated he would admit the testimony of alibi witnesses as to the evening of August 1st and morning of August 2nd, even though no notice of alibi for that period of time had been filed.

This court has stated that a motion for continuance is addressed to the sound discretion of the trial court, and thus, in the absence of a clear showing of abuse, the exercise of that discretion will not be disturbed. *State v. Davis,* 66 Wis.2d 636, 655, 225 N.W.2d 505, 514 (1975) ; *Elam v. State,* 50 Wis.2d 383, 389–90, 184 N.W. 2d 176, 180 (1971).

The basis for the defendant's request for a continuance in this case was surprise at trial caused by unexpected testimony. Such surprise under certain circumstances is recognized as a proper basis for a continuance to allow the party against whom the unexpected testimony

is offered an opportunity to investigate the situation and obtain disproving and impeachment evidence. *United States v. Neff,* 212 F.2d 297, 310 (3d Cir. 1954) ; 3 Wharton's (Torcia), *Criminal Procedure* sec. 434 (12 ed. 1975). *See First National Bank v. Scalzo,* 70 Wis.2d 691, 698, 235 N.W.2d 472, 473 (1975) ; *State v. Davis, supra* at 654, 225 N.W.2d at 514.

Nevertheless, where a party claims surprise at trial, continuance is not automatically granted. While all the circumstances in each case must be considered, essentially three qualifications must be met before a denial of a continuance based upon surprise at trial caused by unexpected testimony will be held upon review to be an abuse of discretion :

1. There must have existed actual surprise; thus, the development must have been something which the party who sought the continuance could not reasonably have been expected to foresee or anticipate. *United States v. Clements,* 484 F.2d 928, 931 (5th Cir. 1973), *cert. denied,* 415 U.S. 991 (1974) ; *See Laev v. State,* 152 Wis. 33, 40–42, 139 N.W. 416, 419 (1913).

2. Where the surprise is caused by unexpected testimony, the party who sought the continuance must have made some showing that contradictory or impeaching evidence could probably be obtained within a reasonable time. *McKinney v. Jones,* 55 Wis. 39, 48, 11 N.W. 606, 611 (1882).

3. The denial of the continuance must have been, in fact, prejudicial to the party who sought it. *Page v. American Family Mutual Insurance Co.,* 42 Wis.2d 671, 679–81, 168 N.W.2d 65, 69 (1969) ; *Druska v. Western Wisconsin Telephone Co.,* 177 Wis. 621, 623, 189 N.W. 152, 153 (1922).

It is at least arguable that the first two qualifications are met in this case. However, regardless of the determination relative to the first two qualifications, the rec-

ord fails to disclose any actual prejudice to the defendant caused by the denial of the continuance. In deciding whether actual prejudice resulted, this court may use hindsight and view the question in light of the events subsequent to the trial court's ruling. 3 Wright, *Federal Practice and Procedure, Criminal,* sec. 832, at 334 (1969); *Stein v. United States,* 271 F.2d 895, 897 (9th Cir. 1959), *cert. denied,* 362 U.S. 950 (1960).

The defendant claims he was prejudiced by being forced to present evidence of an alibi for the evening of August .2nd–3rd even though the complainant testified the offense occurred the night before. This, defendant asserts, could only serve to convince the jury that he was attempting to confuse the issues. The denial of the continuance could not have forced the defense to present such evidence, and thus no prejudice which may have resulted from this presentation may be attributed to the decision of the trial judge.

There is nothing in the record to indicate the defendant was prejudiced in the presentation of his defense. Prejudice could only have occurred if, because of lack of time, the defendant could not prepare and present an alibi for the evening of August 1st–2nd. The record shows that although prior to trial the defendant told his counsel he recalled being at someone's house that night, at trial the defense did not make an effort to present any alibi for the evening of August 1st–2nd. Upon direct examination of the defendant, defense counsel asked no questions relating to his whereabouts that evening. Upon cross-examination, the defendant responded to questions of whether he was at the home of his friend Audrey Hites on the evening of August 1st–2nd by stating, "I would say so, yes." After the defendant denied taking his daughter to Jones Island that evening, the prosecutor asked if the reason for that denial was because the defendant was at the home of Audrey Hites, and the de-

fendant responded affirmatively. Upon redirect examination, however, defense counsel questioned the defendant as to his reason for testifying he had been at Audrey Hites' home on the evening the crime allegedly took place. The defendant stated this testimony was based upon his routine activity, but that he could not positively state he had been at the home that night. Audrey Hites had previously testified that she could recall nothing about the evening of August 1st–2nd. It is simply not believable that an alibi existed, and yet the defense did not attempt to elicit any testimony whatsoever as to that alibi from the defendant.

Although the trial lasted two days, no other witness or evidence was presented in relation to the defendant's activities on the evening the offense allegedly took place. Over this period of time the defendant could have informed his counsel of other persons whom he remembered being with or who might have seen him that evening. Certainly efforts could have been made to contact such persons either during a recess or during the evening of the first day of trial. The record fails to show the trial judge was at any time informed that there were persons the defendant recalled being with that night, but for some reason they could not be contacted. Thus, the record contains absolutely nothing which indicates an alibi for the evening of August 1st–2nd existed, and thus no prejudice could have resulted by the denial of time to prepare one.

Upon review there is no indication that the denial of the continuance affected the outcome or prejudiced the defendant. Therefore, there was no abuse of discretion by the trial judge.

*Prior Sexual Conduct of Victim*

On cross-examination defense counsel asked the complainant if she had engaged in sexual intercourse with

anyone other than the defendant. Upon her affirmative response, she was then asked to disclose how many times she had sexual intercourse with other men. The state's objection to this question was sustained by the trial court, and the defendant contends this action by the trial court constitutes error.

The defendant's stated purpose in attempting to probe the complainant's prior sexual conduct was to show that she frequently engaged in sexual intercourse and used it as a common means of communication of her feelings and emotions toward others, and that, because she understood this means of communication best, chose to falsely accuse her father of incest in order to express her anger toward him. This claimed purpose is nebulous at best.

It is at once obvious that such evidence is not relevant to show the daughter was of an unchaste character, for consent of the complainant is no defense to the charge of incest, as it is to the charge of rape. *State v. LaFernier,* 37 Wis.2d 365, 377–78, 155 N.W.2d 93 (1967). It is also noteworthy that even in cases where consent to a sex act is a defense, the legislature has recently limited admissibility of evidence of a victim's prior sexual conduct. Sec. 272.11(2) Stats.

The defendant asserts that evidence of the daughter's prior sexual conduct is relevant and admissible under sec. 904.04(2), Stats., to prove her motive, intent, knowledge and plan to falsely accuse her father of incest. He further claims that the exclusion of this evidence resulted in a denial of the right to confrontation of his accuser. The logic employed by the defendant in claiming this evidence was relevant is not sound. Merely because the daughter may have adopted sexual activity as a means for communication, it does not follow that she would express her anger by falsely accusing her father of incest. This court has held the similarity of the circumstances of the prior act to the circumstances of the element sought

to be proved to be a critical factor in the probative value of the evidence of prior acts. *State v. Kuta,* 68 Wis.2d 641, 645, 329 N.W.2d 580, 582 (1975). Expression by false accusation of a crime is not of the same method as expression through sexual conduct. Stated another way, the elicited testimony would show acts, prior sexual acts, which are not similar to the act which is sought to be proved, a false accusation of incest. Thus, in relation to showing a similarity in motive, intent, plan or knowledge between the act sought to be proved and the alleged prior acts, in this case the evidence of the prior acts is totally irrelevant.

At oral argument before this court counsel for the defendant asserted that it was intended at trial to show the complainant had previously made false statements relating to sexual matters, most specifically that she had claimed falsely several times that she was pregnant. As a matter of fact, the testimony before the jury does include evidence of these false assertions. Nevertheless, this argument by counsel obscures the fact that the defendant, upon appeal, challenges the exclusion of evidence of the complainant's prior sexual conduct, not prior false accusations. Evidence of sexual conduct does not relate to any inclination to make false claims as to sexual matters.

The defendant cites two cases, *Davis v. Alaska,* 415 U.S. 308 (1974), and *Maryland v. DeLawder,* 28 Md. App. 212, 344 A.2d 446 (1975), in support of his contention that the daughter's prior sexual conduct is relevant to the truthfulness of her accusatory testimony. In both of these cases, evidence of prior acts was found relevant to the question of a witness' truthfulness. In *Davis* the defense sought to show the prosecution witness' out-of-court identification of the accused was untrustworthy because the witness was concerned, due to his prior record, that he would be a suspect in the investigation which led to the accused, and also because he believed his status as a probationer vulnerable. In *DeLawder,* the defense's

theory in attempting to elicit testimony concerning the prosecutrix's prior sexual conduct was that she believed she was pregnant by another man and was afraid to tell her mother she voluntarily had sexual intercourse with others; therefore, she was motivated to falsely accuse the defendant of rape.

In both of these cases, the defense theory was based upon logical reasoning for a motive to be untruthful and the evidence of the prior acts was directly related to the motive. For example, in *DeLawder* it would have been impossible to prove the prosecutrix's motive for untruthfulness without showing she had previously had sexual intercourse and became pregnant. In the present case, however, the complainant's prior sexual conduct is not related to the alleged motive for untruthfulness, animosity toward the defendant, and therefore, the *Davis* and *DeLawder* cases are clearly distinguishable.

Even if the court could find some probative value in the evidence of these prior acts, it is certainly clear that whatever probative value that evidence might have is outweighed by the great risk of prejudice this sort of inflammatory evidence might inject into the case. Under such circumstances the evidence may be properly excluded within the discretion of the trial judge. Sec. 204.-03, Stats.; *Jones (George Michael) v. State,* 70 Wis.2d 41, 54, 233 N.W.2d 430, 437 (1975).

We conclude that the trial court properly excluded the evidence of prior sexual acts in this case. The evidence was not relevant to the issues of the case or credibility. The defendant was not denied the right to present his theory for his daughter's alleged untruthfulness, that theory being animosity toward him. He was only prevented from introducing irrelevant and prejudicial evidence.

*By the Court.*—Judgment and order affirmed.

ABRAHAMSON, J. *(dissenting)*. When the defense is alibi, I would hold that it is prejudicial error for the trial court to refuse to grant a continuance to the defendant when the chief prosecution witness, on the date of trial, changes her testimony as to the date of the alleged offense. The majority opinion seems to hold that even where the defendant and the state are surprised by the change in the witness's testimony, actual prejudice must be shown. I believe that actual prejudice is presumed under these circumstances.

The complaint charged that the offense was committed on August 2, 1974. At the preliminary hearing on September 19, 1974, the witness testified she saw the defendant beginning at 11 a.m. on August 2, 1974, and that the alleged offense took place at about midnight of August 2, 1974. On cross examination she indicated that she was not "positive" about the date. The state filed the information on September 19, 1974, setting forth August 2, 1974, as the date of the offense. The defendant's amended notice of alibi was given to the district attorney on November 27, 1974, pursuant to sec. 971.23 (8), Stats.[1] The state is obliged to advise the defendant within ten days after receipt of notice of alibi of witnesses whom the state proposes to offer in rebuttal of the alibi.[2] De-

---

[1] Sec. 971.23 (8), Stats. 1973:

"(8) NOTICE OF ALIBI. (a) If the defendant intends to rely upon an alibi as a defense, he shall give written notice thereof to the district attorney at the arraignment or at least 20 days before trial stating particularly the place where he claims to have been when the crime is alleged to have been committed together with the names and addresses of witnesses to the alibi, if known.

"(b) In default of such notice, no evidence of the alibi shall be received unless the court, for cause, orders otherwise.

"(c) The court may enlarge the time for filing a notice of alibi as provided in par. (a) for cause.

". . ."

[2] Sec. 971.23 (8) (d), Stats. 1973:

"(d) Within 10 days after receipt of the notice of alibi, or such other time as the court orders, the district attorney shall

fendant's alibi listing witnesses for his whereabouts on August 2d relied on the date set forth in the testimony at the preliminary hearing and the date used in the information.

"Defendant states that *at the time of the alleged crime to have been committed, to-wit: in the evening hours of August 2, 1974, at approximately midnight,* he was at places in the City of Milwaukee, State of Wisconsin, other than at a parking lot on Jones Island, 2400 South Lincoln Memorial Drive, City of Milwaukee. *That said alibi is based upon the notice of the time of the alleged offense given to the defendant by the testimony adduced at the preliminary hearing by the State's witness . . . and the information filed by the District Attorney charging said defendant with a violation of Wisconsin Statutes, 944.06. . .*" Amended Notice of Alibi (emphasis supplied).

After the preliminary examination and prior to trial the defendant received no information which would have or should have led him to believe that the crime would be proven to have occurred at any time other than around midnight of August 2d.

The state admitted to the trial court that the change in the witness's testimony came as a surprise to it as well as to the defendant.

Obviously when the witness changed her testimony the defendant's case was significantly harmed. The state had to prove "what, where, who and when." The defense was based upon the assumption that the state could not prove the "when" beyond a reasonable doubt. Usually a variance as to time set forth in a complaint or information and the proof of time is not fatal. Sec. 971.26, Stats.[3] In

furnish the defendant notice in writing of the names and addresses, if known, of any witnesses whom the state proposes to offer in rebuttal to discredit the defendant's alibi. In default of such notice, no rebuttal evidence on the alibi issue shall be received unless the court, for cause, orders otherwise."

[3] Sec. 971.26, Stats. 1973:

"FORMAL DEFECTS. No indictment, information, complaint or warrant shall be invalid, nor shall the trial, judgment or other

my opinion, the change of date here was fatal to the defendant's chance of getting a fair trial. The alibi statute requires the defendant, twenty days in advance of trial, to particularize alibi evidence as to place and persons at the time when the crime is alleged to have been committed It similarly requires the state to list its rebuttal witnesses. By interpreting these provisions to permit the state on the date of trial to change the date of the offense, the majority has defeated the purpose of the statute. The only rational and fair interpretation of the alibi statute is that the defendant must advise of alibi, the state must advise the defendant of its witnesses and the state must give the defendant timely information as to any change in the time or place of the offense. If the state fails to give such timely information to the defendant, the defendant has been deprived of a fair trial. Without adequate reciprocal discovery opportunity the defendant is denied due process.

The United States Supreme Court has upheld the constitutionality of statutes requiring the criminal defendant to notify the prosecution of an alibi defense. *Williams v. Florida*, 399 U.S. 78, 90 S. Ct. 1893, 26 L. Ed.2d 446 (1970). However, the Court emphasized that the constitutionality of such statutes might depend on "whether the defendant enjoys reciprocal discovery against the state." *Williams, supra,* at 82, n. 11. In *Wardius v. Oregon,* 412 U.S. 470, 93 S. Ct. 2208, 37 L. Ed.2d 82 (1973), the United States Supreme Court was squarely faced with the question of the right to reciprocal discovery of a defendant forced to comply with a "notice of alibi" statute. The Supreme Court held that the due process clause of the fourteenth amendment forbids enforcement of alibi

proceedings be affected by reason of any defect or imperfection in matters of form which do not prejudice the defendant."

*See also Burkhalter v. State,* 52 Wis.2d 413, 422, 190 N.W.2d 502 (1971).

rules unless reciprocal discovery rights are given to criminal defendants. The Court said it was unfair to force the defendant to reveal his defense and to allow the state to surprise the defendant on the very piece of evidence the defendant disclosed to the state.[4]

The very situation condemned in *Wardius* is present in the instant case. I see no difference between surprising a defendant by testimony rebutting his alibi and surprising him by changing the time of the crime he is alleged to have committed, and for which he had advised the state of his alibi. If anything, the latter is the more damaging and unfair to the two. For this reason, I would reverse and remand for a new trial.

I have been authorized to state that Mr. Justice HEFFERNAN and Mr. Justice DAY join in this dissent.

---

[4] "Notice-of-alibi rules, now in use in a large and growing number of States, are based on the proposition that the ends of justice will best be served by a system of liberal discovery which gives both parties the maximum possible amount of information with which to prepare their cases and thereby reduces the possibility of surprise at trial. [Citations omitted.] The growth of such discovery devices is a salutary development which, by increasing the evidence available to both parties, enhances the fairness of the adversary system. As we recognized in *Williams,* nothing in the Due Process Clause precludes States from experimenting with systems of broad discovery designed to achieve these goals. 'The adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played. We find ample room in that system, at least as far as "due process" is concerned, for [a rule] which is designed to enhance the search for truth in the criminal trial by insuring both the defendant and the State ample opportunity to investigate certain facts crucial to the determination of guilt or innocence.' 399 U.S., at 82 (footnote omitted).

"Although the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded, but cf. *Brady v. Maryland,* 373 U.S. 83 (1963), it does speak to the balance of forces between the accused and his accuser. . . .

". . . [W]e do hold that in the absence of a strong showing of state interests to the contrary, discovery must be a two-way street. The State may not insist that trials be run as a 'search for truth' so far as defense witnesses are concerned, while maintaining 'poker game' secrecy for its own witnesses. It is fundamentally unfair to require a defendant to divulge the details of his own case while at the same time subjecting him to the hazard of surprise concerning refutation of the very pieces of evidence which he disclosed to the State." 412 U.S. at 473–476.