STATE OF MARYLAND *v.* LEE
FRANKLIN DeLAWDER

[No. 1134, September Term, 1974.]

*Decided September 23, 1975.*

The cause was argued before ORTH, C. J., and MELVIN, J., and EDWARD F. BORGERDING, Administrative Judge of the District Court of Maryland for District 1, specially assigned.

*Donald R. Stutman, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *Jerome C. Schaefer, Assistant State's Attorney for Montgomery County,* on the brief, for appellant.

*Michael G. Trainer, Assigned Public Defender,* for appellee.

ORTH, C. J., delivered the opinion of the Court.

## STATEMENT OF THE CASE

On 30 June 1972 Lee Franklin DeLawder was found guilty by a jury in the Circuit Court for Montgomery County of carnal knowledge of a female under the age of 14 years. A 15 year sentence was imposed. The judgment was affirmed on direct appeal. *DeLawder v. State,* No. 663, September Term, 1972, filed 8 June 1973, unreported, 18 Md. App. 740, *cert. denied,* 269 Md. 757. He filed a petition on 19 December 1973 attacking the judgment under post conviction procedures. After a plenary hearing, relief was denied by an order of the Circuit Court for Montgomery County issued 14 October 1974. Maryland Rule BK45 a. DeLawder sought leave to appeal. Code, Art. 27, § 645-I; Maryland Rule BK46. We granted the application and ordered the case remanded for compliance with Rule BK45 b requiring that the order of the hearing court shall be accompanied by a short memorandum

which shall include the reasons for the action taken thereon. *DeLawder v. Warden,* 23 Md. App. 435.

One of the grounds presented in the post conviction proceeding as reason why the order should be reversed was that the court in the trial of the substantive offense had denied DeLawder his constitutional right to cross-examine the witnesses against him as that right was to be enjoyed in the light of *Davis v. Alaska,* 415 U. S. 308, decided 27 February 1974. On remand, the hearing court held that the right had been violated and that *Davis* was to be given full retroactive application. By order issued 14 January 1975 it vacated the judgment and ordered that DeLawder be given a new trial. The State applied for leave to appeal. We granted the application by our order of 25 February 1975 and directed that the case be transferred to our regular appeal docket. Briefs were duly filed and oral argument received.

## ISSUES FOR DECISION

1) Whether DeLawder's right of cross-examination was violated under the rule of *Davis v. Alaska, supra.*

2) If so, whether *Davis* has retroactive application.

## THE LAW

In affirming the judgment on direct appeal, we held that the trial court did not err in sustaining objections made to questions attempting to show that the prosecuting witness had sexual intercourse with other men on other occasions. The general rule is that because consent is not an issue in a carnal knowledge prosecution, evidence that the prosecutrix had prior intercourse with men other than the accused, or that her reputation for chastity was bad is *immaterial when offered as an excuse or justification,* and so is inadmissible for that reason. Annot., 140 A.L.R. 364, 365; 1 *Wharton's Criminal Evidence* § 237 at 522 (13th ed. 1972). This rule was stated by the Court of Appeals in *Rau v. State,* 133 Md. 613, 615:

"The prosecutrix under the law by reason of her

age was not capable of consenting to sexual intercourse with the traverser and the question of her prior intercourse with another or her chastity was not a material issue and could not reflect upon his guilt or innocence, under the fourth count of the indictment [carnal knowledge]."

There is an exception to the general rule when it appears that the hymen of the prosecutrix has been ruptured or injured and it is alleged that the trauma was caused by the defendant. To rebut such proof the defendant may introduce evidence of acts of prior unchastity of the prosecutrix as tending to show that another was responsible for the trauma. 140 A.L.R. at 367. Compare *Duvall v. State,* 151 Md. 38, 42. The only acts of intercourse, however, which may be shown are those occurring about the time of the act which, in the nature of things, could have caused the condition. Wharton, *supra,* at 525.

The trial judge correctly applied these rules. He restricted the introduction of evidence concerning the unchastity of the prosecutrix on the ground that consent is not an element of the crime of carnal knowledge. He permitted testimony concerning her sexual activity "within a day or two" of the alleged crime because when she was medically examined about 6 hours after the time the crime was alleged to have been committed, there was bruising and discoloration around the hymen or introitus of the vaginal canal. It was the opinion of the examining physician that the bruising occurred within two or three days prior to the examination. DeLawder, however, contends that in the light of *Davis* the trial court, by restricting cross-examination, violated his constitutional right to confront his accusers. Our holding on direct appeal did not necessarily finally litigate the contention as presented upon collateral attack. Code, Art. 27, § 645A (d) provides:

"For the purposes of this subtitle and notwithstanding any other provision hereof, no allegation of error shall be deemed to have been finally litigated or waived where, subsequent to any

> decision upon the merits thereof or subsequent to
> any proceeding in which said allegation otherwise
> may have been waived, any court whose decisions
> are binding upon the lower courts of this State
> holds that the Constitution of the United States or
> of Maryland imposed upon State criminal proceed-
> ings a procedural or substantive standard not
> theretofore recognized, which standard is intended
> to be applied retrospectively and would thereby
> affect the validity of the petitioner's conviction or
> sentence."

As *Davis*, was decided subsequent to our decision, we must determine whether it affects the validity of DeLawder's conviction.

## The Confrontation Clause of the Sixth Amendment

In *Davis*, at 315, the Supreme Court of the United States reviewed the reach of the Confrontation Clause of the Sixth Amendment to the federal Constitution. "The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.' This right is secured for defendants in state as well as federal criminal proceedings under *Pointer v. Texas*, 380 U. S. 400 (1965). Confrontation means more than being allowed to confront the witness physically.. 'Our cases construing the [confrontation] clause hold that a primary interest secured by it is the right of cross-examination.' *Douglas v. Alabama*, 380 U. S. 415, 418 (1965)." "Cross-examination", the Court observed, at 316, "is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness's perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, *i.e.*, discredit, the witness." A witness may be discredited by a general attack on his credibility by introducing evidence of a prior criminal

conviction of that witness. "By so doing the cross-examiner intends to afford the jury a basis to infer that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony." *Id.* A witness may also be discredited by a more particularized attack. This is done by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. "The partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.' 3A J. Wigmore, Evidence § 940, p. 775 (Chadbourn rev. 1970)." *Id.* The Supreme Court has recognized "that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. *Greene v. McElroy*, 360 U. S. 474, 496 (1959)." *Id.*, at 316-317. The denial of effective cross-examination " 'would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it.' " *Id.*, at 318, quoting *Brookhart v. Janis*, 384 U. S. 1, 3 (1966) as quoted in *Smith v. Illinois*, 390 U. S. 129, 131 (1968).

We look to see how these rules were applied in *Davis.*

## The *Davis* Ruling

Davis was convicted of burglary and grand larceny in a state court at a trial in which the court on motion of the prosecution issued a protective order prohibiting the questioning of Richard Green, a key prosecution witness,[1] concerning Green's adjudication as a juvenile delinquent relating to a burglary and his probation status at the time of the events as to which he was to testify. The motion was

1. In the early morning hours of 16 February 1970 a safe was stolen from the Polar Bar in Anchorage, Alaska. Green, then 16 years of age, discovered the safe the next day near his home. He told investigating officers that he had seen and spoken with two black men near where the safe had been found. He identified Davis as one of the men from photographs and in a lineup. Davis v. Alaska, *supra*, at 309-310.

granted in reliance on a state rule and statute which preserved the confidentiality of juvenile adjudications of delinquency. The evidence against Davis was entirely circumstantial and the defense wanted to point out to the jury that Green was on probation for robbery, suggesting the possibility that he acted either out of fear or concern for his probationary status. The defense made clear that it did not intend to use Green's juvenile record to impeach his credibility generally, but only as necessary to examine him for any possible bias and prejudice. "Not only might Green have made a hasty and faulty identification of [Davis] to shift suspicion away from himself as one who robbed the Polar Bar, but Green might have been subject to undue pressure from the police and made his identification under fear of possible parole revocation." 415 U. S. at 311. See 43 U. Cin. L. Rev. 647 (1974). The trial court rejected even this limited use of Green's adjudication, but defense counsel did his best to expose Green's state of mind at the time he discovered the safe. Green, however, made a flat denial to questions whether he was upset by the fact that the safe was found on his property, whether he felt the authorities might suspect him, and whether he felt uncomfortable about it. Asked, "Did you suspect for a moment that the police might somehow think you were involved in this?", he replied, "I thought they might ask a few questions is all." It was elicited that Green was questioned about the incident by the investigating officers. He was then asked, "Had you ever been questioned like that before by any law enforcement officers?" and answered, "No." The prosecution objected and the court sustained the objection. *Davis*, at 312-313. Thus "[w]hile counsel was permitted to ask Green *whether* he was biased, counsel was unable to make a record from which to argue *why* Green might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial." *Davis*, at 318.

The Alaska Supreme Court refused to reach the issue of whether the State's policy of preserving the anonymity of a juvenile offender denied Davis his Sixth Amendment right of confrontation. It affirmed the conviction on the grounds

that the scope of cross-examination allowed was adequate to develop the issue of bias and convey it to the jury. *Id.*, at 315; *Davis v. State*, 499 P. 2d 1025, 1036. The Supreme Court did not accept this. It said, at 318:

> "On the basis of the limited cross-examination that was permitted, the jury might well have thought that defense counsel was engaged in a speculative and baseless line of attack on the credibility of an apparently blameless witness or, as the prosecutor's objection put it, a 'rehash' of prior cross-examination. On these facts it seems clear to us that to make any such inquiry effective, defense counsel should have been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness."

It held that disallowance of the defense's attempt to show bias of the prosecution's crucial witness by cross-examination concerning the witness' juvenile record violated Davis's Sixth and Fourteenth Amendment rights. *Id.*[2] It is clear that *Davis* turned on the correctness of the

---

**2.** The Court did not challenge the State's interest as a matter of its own policy in the administration of criminal justice to seek to preserve the anonymity of a juvenile offender.

"Here, however, petitioner sought to introduce evidence of Green's probation for the purpose of suggesting that Green was biased and, therefore, that his testimony was either not to be believed in his identification of petitioner or at least very carefully considered in that light. Serious damage to the strength of the State's case would have been a real possibility had petitioner been allowed to pursue this line of inquiry. In this setting we conclude that the right of confrontation is paramount to the State's policy of protecting a juvenile offender. Whatever temporary embarrassment might result to Green or his family by disclosure of his juvenile record — if the prosecution insisted on using him to make its case — is outweighed by petitioner's right to probe into the influence of possible bias in the testimony of a crucial identification witness. . . .

The State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness." *Id.*, at 319-320.

Alaska court's evaluation of the "adequacy" of the scope of the cross-examination permitted. The Supreme Court reversed because it disagreed with the Alaska court's interpretation of the Confrontation Clause. *Id.*, at 315. The view of the Supreme Court was that the matter suppressed was necessary in the case in order "to show the existence of possible bias and prejudice. . . ." *Id.*, at 317.[3]

## THE INSTANT CASE

DeLawder's counsel made clear from the onset of the case that the defense strategy would be to discredit the prosecuting witness by revealing her possible biases, prejudices, or ulterior motives in alleging that DeLawder carnally knew her in the early morning of 20 January 1972. This strategy would be pursued by the tactic of proving that at the time of the alleged incident, she thought she was pregnant by someone else and claimed that DeLawder raped her because she was afraid to tell her mother she voluntarily had sexual intercourse with others.[4] To show that she thought she was pregnant at the time of the alleged encounter with DeLawder, it would be necessary to establish that she had engaged in prior acts of sexual intercourse. The

---

3. Mr. Justice Stewart wrote a concurring opinion to emphasize that "the Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination about his past delinquency adjudications or criminal convictions." *Id.*, at 321.

Mr. Justice White, joined by Mr. Justice Rehnquist, wrote a dissenting opinion in which he saw no constitutional principle at stake. "This is nothing more than a typical instance of a trial court exercising its discretion to control or limit cross-examination, followed by a typical decision of a state appellate court refusing to disturb the judgment of the trial court and itself concluding that limiting cross-examination had done no substantial harm to the defense." He objected to the Court "second-guessing the state courts. . . ." *Id.*, at 321.

4. DeLawder was indicted on 9 February 1972 on charges of rape, assault with intent to rape, carnal knowledge, attempted carnal knowledge, assault and battery, and assault. He went to trial before a jury on 8 May 1972. Before the jury retired to deliberate its verdict the State entered a *nolle prosequi* to all counts of the indictment except that charging rape and that charging carnal knowledge. The jury were unable to agree on a verdict and on 12 May 1972 the court declared a mistrial. On 19 May 1972 the State nol prossed the rape count and retrial commenced on 27 June 1972 on the charge of carnal knowledge.

proposed strategy was first disclosed when the State offered a motion *in limine* immediately before the start of the retrial. The motion was that the defense refrain from any questions or any remarks in opening or closing statement as to the reputation of the prosecutrix for chastity. Defense counsel objected to the grant of the motion:

> "In regard to the first motion made by the State, we proffer that there are two witnesses, one which will testify that he had a conversation with this young lady two days after this incident allegedly occurred, at which time she told him she was pregnant by another man.

> Her mother, there will be testimony to the effect that her mother is very strict, not the type of person that a girl could come home and tell her mother she was pregnant.

> We have testimony from the girl's best friend that this girl, [the prosecutrix], told the best friend that she was pregnant, and that either Stanley Hicks or Darrell McDonald was the father.

> This supposedly occurred prior to the time this alleged rape took place."

The strategy was iterated and reiterated during vain attempts to pursue the point on cross-examination of the prosecutrix. On appeal, DeLawder puts it this way:

> "The Appellee [DeLawder] readily admits that in the case of statutory rape, consent is not an element of the crime and, therefore, the question of the chastity of the prosecutrix is entirely immaterial and evidence related thereto should be excluded. *Rau v. State*, 133 Md. 613 (1919). However, at the trial of this case Appellee was not offering evidence to show consent or chastity of the prosecutrix, but was attempting to adduce evidence directly relating to the prosecutrix' credibility and the veracity of her testimony. The attempts by defense counsel to cross-examine the prosecutrix in

this case and his proffers to the Court throughout the course of the trial indicate that evidence of her prior conduct was not introduced 'to show prior acts of sexual intercourse . . . (but) to show motive on the part of (the prosecutrix), and that she lies about these things,' . . . and that she had made prior accusations of statutory rape against other individuals. . . . While this type of evidence necessarily involves the prior sexual conduct and chastity of the prosecutrix, its purpose goes beyond this issue to the issue of the credibility of the witness, an issue that must be tested in order to insure a full and fair trial to the accused."

On cross-examination DeLawder's counsel attempted to question the prosecutrix concerning her sexual activities prior to the incident in order to impeach her credibility. He asked her if she had talked to a Tommy Soper [5] after the alleged crime:

"Q. Do you recall having a conversation two days after this incident took place with a boy named Tommy Soper?

A. No, sir.

Q. You do not recall having such a conversation?

A. No, sir.

Q. Do you recall that Kenny Jones and Tommy Soper came to your house at that time?

A. Yes, sir; I do.

Q. And you did not have a conversation with Tommy Soper?

A. No, sir.

Q. You never said a word to him?

A. No."

5. During the argument on the motion *in limine* defense counsel proffered that a witness would testify that the prosecutrix had told him two days after the alleged rape that she was pregnant by another. It is patent that this witness was Soper.

The cross-examination continued:

"Q.  At the time of this alleged rape, I am talking about before the alleged rape took place, did you think you were pregnant?

A.  No, sir.

Q.  Do you know a girl named Pamela Henning? [6]

A.  Yes, sir.

Q.  As a matter of fact, she is your best friend, isn't she?

A.  Yes, sir.

Q.  You do not recall telling her something different?

MR. MITCHELL [Assistant State's Attorney]: I object now, Your Honor. Pamela testified at the trial.

MR. SMALLWOOD [Defense Counsel]: No, sir.

THE COURT: Objection be sustained."

Precluded from questioning the prosecutrix concerning her conversations with Pamela Henning, defense counsel iterated his reasons for pursuing this line of questioning:

"Your Honor, in order to properly defend this man, I have got to show a motive for this girl lying about it.

I proffer that her mother is very strict and has on occasion beat this girl until she was black and blue with a board, never allowed her to date. . . .

And this girl was scared to death of her mother and could not go home and tell her mother that she was pregnant; but if she could go home and tell her mother, 'I've been raped; now, I am pregnant,' she could then get off the hook.

I state, Your Honor, that it is perfectly proper for me to bring this fact out to show this girl's motive

---

6. It is apparent that Pamela Henning was the other witness whose testimony was proffered during the argument of the motion *in limine.*

for lying, especially when two witnesses who will testify that this girl said she was pregnant around that time by either Stanley Hicks or Darrell Anderson; and she also phoned another boy by the name of Russell Alder and accused him, or his cousin, of making her pregnant.

I state, Your Honor, that that is sufficient to give this girl a motive for lying about a man raping her.

Not only that, but at the time she went to the hospital, before she went to the hospital, she lied to the police officer and told him that she had intercourse with a boy named Michael Ryan."

The Court refused to accept this argument:

"You know all of this is not going to be permitted at this trial. This is a carnal knowledge of a girl under fourteen. . . . [7]

You are talking about all kinds of conjecture which I think really is going beyond the proper evidence in this case."

Later counsel was denied the opportunity to cross-examine the prosecutrix about her conversation with Russell Alder. The court ruled that such evidence "would be before the fact, several weeks." The trial court also restricted counsel when inquiring into the prosecutrix's conversations with Officer Householder: [8]

"Q. What did you tell Officer Householder?

A. Just what I told you all.

Q. You did not tell him anything additional to what you told us?

---

7. The court continued: "and she has already said that she was afraid she might have been pregnant. She answered that question, and do not pursue it any more." The prosecutrix in fact denied she thought she was pregnant at the time of the alleged coitus with DeLawder. The court later recognized that the prosecutrix had indicated only that she was afraid she was pregnant as a result of the alleged rape.

8. Householder was a Montgomery County deputy sheriff who had conducted an investigation into the allegations of the prosecutrix.

A. No.

Q. Did you tell him anything about Michael Ryan?

MR. MITCHELL: I object, Your Honor.

THE COURT: You may answer that yes or no. Do not say anything more.

THE WITNESS: Yes, I did.

BY MR. SMALLWOOD:

Q. What did you tell him?

MR. MITCHELL: I object,

THE COURT: Objection be sustained:

When counsel attempted to cross-examine the prosecutrix concerning her relationship to her mother, he was again thwarted by the court:

"Q. Are you afraid of your mother?

MR. MITCHELL: I object.

THE COURT: Sustained.

MR. SMALLWOOD: May we approach the bench, Your Honor?

(Whereupon, bench conference as follows:)

MR. SMALLWOOD: Your Honor, I would like to establish the relationship between this girl and her mother as to her fear of telling her mother that she thought she was pregnant at that time.

I think that is very relevant to this case as establishing her motive for lying about this alleged rape.

I mean the jury is not going to believe a man's story if they cannot see some motive for the girl lying. If she is scared to death of her mother, she is not about to walk through the door and say, 'Ma, I'm pregnant.'

MR. MITCHELL: The rules of evidence do not conform to counsel's theory in the case.

THE COURT: All right, you have your statement in the record. I do not think that that — well, I think the exception is well taken.

Whether she was scared of her mother *per se* is not relevant in this case at this time."

Later in the trial, during the direct examination of the prosecutrix, called by DeLawder to testify in his behalf after the court refused to allow the defense to call her as a hostile witness, the court, citing *Rau v. State, supra,* to the effect that consent is no element of the crime of statutory rape, said: "In my judgment, what you are trying to do now under the guise of impeachment, is trying to bring in chastity, the lack of chastity. None of this is relevant here. Her statements about relations on New Year's Eve, whether they were by one boy or another boy, concerning chastity, are in my judgment, or should not be gone into any further here, because no criminal charges are brought against either one of these people; and to put it very bluntly, what you are wishing to do now is to indirectly do what you cannot do directly, and that is, bring the prior chastity into this picture, and so to sum it all up, what you wish to do is impeach her chastity or [reputation], which you mentioned or other extraneous matters; and she has already been on the stand, and you have had ample opportunity."

## DECISION

### The Applicability of *Davis*

Defense counsel did his best to show the existence of possible bias, prejudice or ulterior motive of the prosecutrix, causing her to assert that DeLawder carnally knew her. We cannot speculate, more than the Court could in *Davis,* as to whether the jury, as the sole judge of the credibility of a witness, would have accepted this line of reasoning had counsel been permitted to present it fully. But we do conclude, as the Court concluded in *Davis,* that the jurors were entitled to have the benefit of the defense theory before them so they could make an informed judgment as to the weight to place on the prosecutrix's testimony which provided "a crucial link in the proof . . . of [the accused's] act." *Douglas v. Alabama, supra,* at 419. The accuracy and

truthfulness of the prosecutrix's testimony, perhaps even more so than was the case with the witness in *Davis*, were key elements in the State's case against DeLawder. In fact, its case depended entirely on her veracity. The claim of bias, prejudice or ulterior motive which the defense sought to develop was admissible to afford a basis for an inference of undue pressure because of the prosecutrix's possible fear of her mother. The defense was unable to make a record from which to argue to the jury *why* the prosecutrix might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial.[9] It seems clear to us, in the light of *Davis*, that defense counsel should have been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. By being prevented from so doing DeLawder was denied the right of effective cross-examination, a constitutional error of the first magnitude which no amount of showing of want of prejudice would cure.

Our decision does not portend a general departure from the rule enunciated in *Rau v. State, supra.*[10] It is only that

---

9. In Chelton v. State, 45 Md. 564 (1877), the Court of Appeals said, at 570:

"The rule is well settled that while it is competent to prove that a witness for the State has a bias or ill-will against a prisoner, so that the jury may know what weight is to be given to his testimony, it is altogether inadmissible to go into any inquiry as to the causes or circumstances which have created such bias. This as has been correctly argued by the Attorney General would introduce into the trial innumerable side issues, not pertinent or proper for the consideration of the jury."

It seems that Chelton has not been cited in a subsequent opinion of the Court, and the rule of law it enunciated does not appear to have been specifically affirmed or further applied. See Beasley v. State, 271 Md. 521 (1974); DeLilly v. State, 11 Md. App. 676, 681 (1971).

10. We point out that the Court in *Davis*, quoted, at 320, Alford v. United States, 282 U. S. 687, 694:

"[N]o obligation is imposed on the court, such as that suggested below, to protect a witness from being discredited on cross-examination, short of an attempted invasion of his constitutional protection from self-incrimination, properly invoked. There is a duty to protect him from questions which go beyond the bounds of proper cross-examination merely to harass, annoy or humiliate him."

in the setting here, the right of confrontation is paramount to a rule of evidence.[11] We conclude, as the Court concluded in *Davis*, at 320, that the desirability that the prosecutrix fulfill her public duty to testify free from embarrassment and with her reputation unblemished must fall before the right of an accused to seek out the truth in the process of defending himself.

## The Retroactivity of *Davis*

It is manifest from our application of the *Davis* dictates to the case at hand that we believe that *Davis* has retroactive effect. Foremost among the three criteria guiding resolution of the question of the retroactive effect of a holding of the Supreme Court of the United States is the purpose to be served by the new rule. *Desist v. United States*, 394 U. S. 244, 249. When the purpose involves the reliability of the fact determining process of guilt or innocence, the Supreme Court has accorded full retroactivity to its decision without regard to the other two criteria. *State v. Ingel*, 18 Md. App. 514, 522. The right of confrontation guaranteed by the Sixth Amendment has been held to be retroactive. *Barber v. Page*, 390 U. S. 719; *Berger v. California*, 393 U. S. 314. We so consider the *Davis* dictates.

We note that DeLawder did not seek leave to appeal from the denial of relief with regard to the allegation of incompetency of trial counsel and the allegation of the use of perjured testimony by the State. Neither of these allegations are properly before us, although DeLawder presents the question of his trial counsel's competence in his brief.

> *Order of 14 January 1975 of the Circuit Court for Montgomery County affirmed; costs to be paid by Montgomery County.*

11. Our interpretation of *Davis* is not to be construed as an abrogation of the rule that a witness can be impeached by extrinsic evidence only with regard to material facts and not with respect to facts that are collateral, irrelevant or immaterial to issues of the case. Smith v. State, 273 Md. 152. Matters which affect the bias, prejudice and ulterior motives of a witness are material and not collateral. *McCormick on Evidence*, § 36 (2d ed. 1972).