# MICHAEL WILLIAM DEINHARDT *v.* STATE OF MARYLAND

[No. 308, September Term, 1975.]

*Decided December 5, 1975.*

The cause was argued before MOYLAN, GILBERT and MELVIN, JJ.

*William F. C. Marlow, Jr.,* and *W. Stanwood Whiting, Assigned Public Defenders,* for appellant.

*John A. Austin, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Sandra A. O'Connor, State's Attorney for Baltimore County,* and *Steven Silverman, Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

Michael William Deinhardt, appellant, was convicted at a non-jury trial in the Circuit Court for Baltimore County of rape. Following the sentencing of appellant which occurred the same date, an appeal was noted to this Court. Appellant vigorously urges, *inter alia,* that the trial judge erred in refusing ". . . to allow cross-examination seeking to establish the bias of the complaining witness, where her testimony was the only proof tending to establish lack of consent. . . ."

The appellant met the prosecutrix, apparently for the first time, at approximately 10:45 P.M. on June 1, 1974, in Sweeney's Lounge, where the prosecutrix worked as a waitress in the restaurant downstairs, in Baltimore City. A conversation ensued between the appellant and prosecutrix, and the two danced and conversed during the course of the evening. Shortly after midnight, the prosecutrix decided to leave the upstairs lounge. She retrieved her purse from behind the bar and, when offered a ride home by the appellant, readily accepted.

According to the State's case, appellant drove north on the Jones Falls Expressway towards Baltimore County. The prosecutrix noticed that they had passed the exit from the Jones Falls Expressway which led to the street upon which she resided. She wanted to leave the vehicle, but the

appellant produced a switchblade knife, "flicked" it open, told her that she could not leave the car, and he then increased the vehicle's speed to ". . . a hundred miles an hour." According to the prosecutrix the appellant stopped his car ". . . about twenty, [to] twenty-five minutes . . ." later on a "deserted road" where there were ". . . no lights whatsoever." The prosecutrix testified that the appellant drove his car into such a position that the passenger's door could not be opened because of its proximity to a tree. After the appellant had brought the vehicle to a halt, he had the prosecutrix change places with him on the front seat. When the prosecutrix moved onto the driver's side of the front seat, she attempted to open the door to make good an escape, but she was prevented from doing so by the appellant. A struggle ensued for possession of the knife, and during the course of that altercation, the appellant and the prosecutrix each received several cuts upon their person. The prosecutrix received lacerations on her right hand index finger, her legs and her back. Once the appellant regained control of the knife, he struck the prosecutrix upon the side of her face and ordered her into the back of his vehicle, a station wagon, where she was compelled to disrobe and submit to sexual intercourse.

The prosecutrix told the trial judge that after the sexual act had been completed the appellant stated to her that he ". . . was going to kill me on up the road." The appellant drove the car for a period of about "10 minutes" when the prosecutrix observed another car approaching. She leaped from the appellant's car, ran to the approaching vehicle where she sought and obtained the protection of the operator of that car, who telephoned for an ambulance. She was subsequently transported to the Carroll County Hospital. There the prosecutrix was treated for her injuries and the police were notified.

Appellant's version of the incident is in startling contrast to that of the prosecutrix. He states that he picked up the prosecutrix in Sweeney's Lounge, and that he drove her at her request into the countryside. They stopped near New Freedom, Pennsylvania, and from the hill on which they

were parked one could see the lights of New Freedom. Then the prosecutrix left the vehicle for the purpose of relieving herself. When she returned she grabbed his knife from its resting place on the dashboard, and she immediately stabbed him with it. In his attempt to recover the knife from her, she was cut on the hand. Appellant stated that he threatened to have the prosecutrix arrested, presumably for assault upon his person, and at one point he told her that she could get "thirty years" for her having stabbed him. Immediately thereafter, the appellant says, the prosecutrix became extremely friendly and made sexual advances to him. Mutually voluntary sexual intercourse ensued.

At trial the appellant apparently sought to establish that the rape charge was brought by the prosecutrix in an effort to take the legal initiative and thus diminish the effect of the appellant's obtaining a warrant charging her with ". . . assault with intent to murder." [1]

The record reveals the following on cross-examination of the prosecutrix:

"Q. Did Mr. Deinhardt ever threaten to have you charged with assault that night?

Mr. Silverman [Assistant State's Attorney]: Objection.

The Court: Sustained.

Mr. Marlow [Defense Counsel]: Your Honor, I think this clearly goes to the bias of the witness, and why these charges were brought initially.

The Court: The objection has been sustained, Mr. Marlow. If he would make any complaint against her, there is a proper way to prove it."

We think the trial judge has missed the thrust of the purpose of defense counsel's attempted interrogation as to

---

1. The record indicates that appellant did endeavor subsequently to obtain such a warrant but the district court commissioner, after checking with the State's Attorney's office, refused to issue the warrant. A notation discloses that the commissioner was told by the State's Attorney's office that the application for the warrant was ". . . in the form of a defense."

the prosecutrix's motivation in bringing the charge. The question is not whether the appellant did ". . . make any complaint against her. . .," but rather whether the prosecutrix was biased, prejudiced, or acting from some ulterior motive. If her answer to the objected to question had been "yes," the court, depending upon the circumstances, may have attached less credibility to the witness's testimony. As it was, the judge referred to her as a "woman on the loose" and as an "easy pick up." If he, as a result of the answer to the question to which he sustained the objection, had learned that she was motivated by fear of a possible prosecution of assault with a knife, he may have completely discredited her testimony.

On September 23, 1975, this Court in *State v. DeLawder*, 28 Md. App. 212, 216, 344 A. 2d 446, 449 (1975), observed that under the Sixth Amendment to the Constitution, the right to be confronted with the witnesses against him, included the ". . . 'primary interest secured by . . . the right of cross-examination. *Douglas v. Alabama*, 380 U. S. 415, 418, 85 S. Ct. 1074, [1076,] 13 L.Ed.2d 934 (1965).' " The Supreme Court in *Davis v. Alaska, infra*, 415 U. S. at 316, pointed out that " 'Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested.' " 28 Md. App. at 216, 344 A. 2d at 449. Our adversary system permits, if not encourages, the advocate to inquire into the witness's testimony in order to test memory and perception, as well as to impeach the witness so as to discredit his testimony. Cross-examination, however, is not without bounds. The trial judge is vested with broad discretion so as ". . . to preclude repetitive and unduly harassing interrogation. . . ."[2] 28 Md. App. at 216, 344 A. 2d at 449.

Chief Judge Orth, in *DeLawder*, noted that a witness may be discredited by a ". . . cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or

---

**2.** The advocate should bear in mind that part of the art of cross-examining is not to examine crossly. *See* Ballantine, *Some Experiences of a Barrister's Life* 124 (2d ed. 1882).

personalities in the case at hand." 28 Md. App. at 217, 344 A. 2d at 449. Bringing to the surface, for view and scrutiny the witness's motivation for testifying is both a proper and important function of cross-examination and, as such, is a constitutionally protected right. *Greene v. McElroy*, 360 U. S. 474, 496, 79 S. Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959). *DeLawder* declares that the denial of effective cross-examination is constitutional error of such magnitude that it is immaterial whether prejudice is not shown or is even totally lacking. *See Greene v. McElroy, supra; Smith v. Illinois*, 390 U. S. 129, 131, 88 S. Ct. 748, 19 L.Ed.2d 956 (1968); *Brookhart v. Janis*, 384 U. S. 1, 3, 86 S. Ct. 1245, 16 L.Ed.2d 314 (1966).

In *Davis v. Alaska*, 415 U. S. 308, 94 S. Ct. 1105, 39 L.Ed.2d 347 (1974), the Court considered a case wherein Davis was convicted of burglary and grand larceny, largely upon the testimony of a juvenile who had been adjudged to be a delinquent as a result of his participation in a burglary. The juvenile had been placed on probation. Davis's counsel sought to cross-examine the juvenile witness as to the witness's motivation for testifying. Defense counsel wanted to explore the possibility that the juvenile ". . . made a hasty and faulty identification of . . . [Davis in order] to shift suspicion away from himself as one who robbed the Polar Bar, . . . [and to show that the juvenile] might have been subject to undue pressure from the police and made his identifications [of Davis] under fear of possible probation revocation." 415 U. S. at 311, 94 S. Ct. at 1108. The State court refused to allow that cross-examination, although the defense was permitted to interrogate solely as to *whether* the witness was biased. The Supreme Court observed that ". . . counsel was unable to make a record from which to argue *why* [the witness] . . . might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial." 415 U. S. at 318, 94 S. Ct. at 1111. The Alaska Supreme Court had affirmed Davis's conviction on the ground that the scope of the permitted cross-examination was sufficient to convey the concept of the bias of the witness to the jury for its consideration.

*Davis v. State,* 499 P. 2d 1025, 1036 (Alaska 1972). Mr. Chief Justice Burger, for the majority of the Court,[3] said, 415 U. S. at 318, 94 S. Ct. at 1111:

> ". . . On the basis of the limited cross-examination that was permitted, the jury might well have thought that defense counsel was engaged in a speculative and baseless line of attack on the credibility of an apparently blameless witness. . . . On these facts it seems clear to us that to make any such inquiry effective, defense counsel should have been permitted to expose to the jury the facts from which the jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness."

The opinion of the majority in *Davis* makes clear that the refusal to allow the defense to demonstrate bias on the part of the prosecutor's principal witness through cross-examination is a denial of Due Process under the Fourteenth Amendment as well as an infringement upon Davis's Sixth Amendment rights. *See State v. DeLawder, supra.*

Although the case now before us was tried non-jury, we believe the holdings of *Davis* and *DeLawder* to be, nevertheless, controlling. That *Davis* and *DeLawder* were jury trials does not make a scintilla of difference in the application of their rationale to non-jury trials. Where, as here, the trial judge, as trier of the fact and of credibility, limits cross-examination of a witness so as to preclude a demonstration of bias, prejudice or other unworthy motivation on the part of the witness, he prevents the defense from presenting all of the facts, forestalls an adequate basis for assessment of credibility and erodes the purpose of cross-examination, *i.e.,* the search for truth. In short, he places himself in the precarious position of

---

**3.** Mr. Justice White dissented and he was joined therein by Mr. Justice Rehnquist. Mr. Justice Stewart, in a separate opinion, concurred with the majority.

rendering a judgment based upon an incomplete factual predicate.

Paraphrasing *Davis* and *DeLawder*, we cannot speculate whether the revelation of the witness's motivation in testifying would have brought about a different result than that reached by the trial judge. On the other hand, we are unable to state that a disclosure of bias, prejudice or ulterior motives would not have produced a serious question as to the credibility of the witness and possibly injected a reasonable doubt as to the culpability of the accused.

We reverse and remand the matter for a new trial because of the violation of the rights guaranteed appellant by the Sixth and Fourteenth Amendments. At retrial appellant should be afforded an opportunity to show bias, prejudice or ulterior motive, if any, on the part of the principal prosecuting witness.

Appellant has raised a second issue, namely, that the evidence does not indicate that the crime was committed in Baltimore County, and that it does not disclose that the appellant had the intent to commit rape when he asported the prosecutrix into or through Baltimore County. Md. Ann. Code art. 27, § 465.

The trial judge made no specific finding as to whether the rape itself was committed within the territorial confines of Baltimore County, but rather relied upon Md. Ann. Code art. 27, § 465 [4] which provides, in essence, that one may be prosecuted for the crime of rape in any county where the transportation of the victim was begun, continued or ended. The intent to rape occurring before or during asportation, followed by the actual rape, is an essential element of the conferring of jurisdiction upon the county where the asportation of the victim occurred. In the light of our holding, we do not decide the issue inasmuch as at a retrial the alleged defect might well be cured by the requisite proof

---

[4]. In response to appellant's motion to dismiss on the ground of improper venue and lack of jurisdiction made prior to trial, but not then ruled upon, and renewed at the close of the State's case, the trial judge quoted this statutory provision, deemed that it conferred jurisdiction on the court, and denied the motion.

of the situs of the purported rape or a specific finding of requisite intent to rape formulated or continued during asportation.

*Judgment reversed.*
*Case remanded for a new trial.*