**STATE of Missouri,
Plaintiff-Respondent,**

v.

**James McFARLAND,
Defendant-Appellant.**

**No. WD31132.**

Missouri Court of Appeals,
Western District.

July 8, 1980.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 28, 1980.

Application to Transfer Denied
Oct. 15, 1980.

Clifford B. Mayberry, Kirksville, for defendant-appellant.

John Ashcroft, Atty. Gen., Neil MacFarlane, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before WASSERSTROM, C. J., Presiding, and PRITCHARD and KENNEDY, JJ.

WASSERSTROM, Chief Judge.

Defendant appeals from his conviction by a jury of rape by criminally knowing a female under 16 years of age and the consequent sentence of six years in prison.

From the evidence the jury could reasonably have found the following facts. The prosecutrix at the time of the events in question was 15 years old. On the evening of August 17, 1978, Gail Bell, defendant and defendant's brother went to the home of prosecutrix in Kirksville, Missouri. Bell knocked at the front door, asked for prosecutrix and inquired whether she wanted to go out, but prosecutrix declined. While that short conversation occurred, defendant and his brother remained on the sidewalk.

The next evening prosecutrix was home alone. At about 12:15 in the early morning of August 19, defendant returned alone, forced his way into the house and committed forcible rape. Prosecutrix called her mother, who returned home, called the police and took prosecutrix to the hospital. At the hospital an examination was performed which disclosed male semen in prosecutrix's vagina and bruises on her body. Her clothes were torn and seminal stains were also found on her panties.

A complaint was filed February 20, 1979, followed by information and formal arraignment on April 2, 1979. Trial in the circuit court was held May 29 to 31, 1979, and resulted in the conviction from which this appeal is taken.

Defendant's points on appeal may be summarized as follows: (1) that the jury panel was improperly constituted; (2) that the court improperly limited defendant's cross-examination of certain witnesses; (3) that the court erred in overruling an objection to the in-court identification of defendant by prosecutrix; and (4) that the court erred in refusing to give a tendered cautionary instruction with reference to identification testimony.

### I.

Preliminary to the trial, defendant filed a motion to quash the jury panel and offered evidence of the following facts. Adair County, in which the trial was held, has a total population of approximately 25,000. There are approximately an additional 6,500 students who attend two colleges within the city, those students being estimated to range in age between 20 to 25 years old. The sheriff of the county estimated that approximately 20% of the jurors during the year preceding trial were under 30 years of age, and he also gave as his opinion that the number of young people on juries was "substantially less" than the population distribution of the county.

Defendant's attorney took the witness stand to testify that during his term as prosecuting attorney, which had been for a period of eight years ending about two years before this trial, he had come to knowledge that the county clerk had discriminated against registering young people by asking them irrelevant questions and, according to some complainants, harassing them while they were trying to register. Jury panels have been selected in Adair County from voter registration lists, and the jury in the present case was so selected from a registry list compiled at a point of time some years previously but not precisely fixed by the evidence.

During voir dire, defense counsel inquired as to the age of the jurors, and none was under age thirty. No record count was made of those who answered to being over age sixty; but somewhat later, defense counsel stated that he had counted sixteen, while the prosecuting attorney stated that he had counted only eight to ten. Defendant in this case was twenty years of age at the time of trial.

Defendant contends that the above evidence shows that he was tried by a jury which failed to represent a fair cross section of the community. He claimed that this evidence meets all of the requirements of *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979): that the excluded group constituted a distinctive group in the community; that the representation of this group in venires from which the jury was selected was not fair and reasonable; and that the underrepresentation was due to systematic exclusion. Defendant's argument fails on all three counts.

There is nothing to show that the persons falling within the age group 20 to 25 years have any distinctly different characteristics which would warrant treating them as a separate cognizable category. There is a long and impressive line of cases holding that young people do not constitute a separate cognizable group for purposes of jury representation. *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *United States v. Potter*, 552 F.2d 901 (9th Cir. 1977); *United States v. Test*, 550 F.2d 577 (10th Cir. 1976); *United States v. Kirk*, 534 F.2d 1262 (8th Cir. 1976); *United States v. Diggs*, 522 F.2d 1310 (D.C. Cir. 1975); *United States v. Olson*, 473 F.2d 686 (8th Cir. 1973); and cases cited in the foregoing opinions.

With respect to the second *Duren* test, that is concerning a disproportion of young people in jury venires, defendant has also failed in proof. He has not shown any specifics as to the age distribution of the persons whose names were in the jury wheel from which this jury venire was selected. While there is some (but unsatisfactory) evidence as to the make up of this particular venire, there is no evidence with respect to any others. Defendant's proof therefore is defective for the same reason pointed out in *State v. Carter*, 572 S.W.2d 430, 434 (Mo. banc 1978) where it was held:

"[D]efense counsel pointed out the composition of only a single jury panel and petit jury in support of the claim of discrimination. Nothing was offered showing repeated exclusion of an ostensibly neutral selection procedure, nor a procedure under which a subjective evaluation of potential jurors could hide discrimination. There was no proof as to racial composition or of the method of name selection for the 'wheel' for the year or other representative period, nor are we told of the selection process or racial composition of the panel by months, weeks or days from which the array presented on the day of trial was selected. From this absence of proof it cannot be said a prima facie case of racial discrimination appears."

In addition it should be pointed out that the sheriff's generalized conclusion, that young people were underrepresented on juries, was at variance with his other estimates. Accepting his population figure of 25,000 and adding to that the student population of 6,500, Adair County has a total population of 31,500. The sheriff estimated that 20% of the jurors were between ages 21 and 30. Twenty per cent of the total population is 6,300, which is almost exactly the total number of students as estimated by the sheriff. These figures do not show a disproportion, but rather tend to the contrary.

Nor does the evidence show any systematic exclusion of young people from the voter registration lists. Defendant's evidence in this regard was confined to a single instance at some not clearly specified date in the past, and the same practice was not shown to have continued thereafter or to have remained in effect at the time the names were selected for the present jury wheel.

Defendant's first point is without merit.

## II.

When the prosecutrix was taken to the hospital shortly following the assault, she was interviewed by a doctor who took a statement from her. In the course of that statement, she stated that she was nine days late in her menstrual period, that her menstrual cycle was approximately 24 days and that her last act of sexual intercourse had occurred in the second week of May. Defendant sought to cross-examine the doctor with respect to the statement taken by him and also requested permission to interrogate the prosecutrix with respect to the same matters, on the theory that the prosecutrix had a motive to falsely charge rape in order to cover up her feared pregnancy resulting from past consensual sexual intercourse. The trial court ruled that such cross-examination was barred by Section 491.015, RSMo 1978, and therefore would not be permitted. Defendant contends that ruling to be error.

The lateness of the menstrual period would be meaningless in and of itself, and could attain significance only by connection with a prior instance of sexual intercourse. This necessary connection brings the subject matter within the purpose and scope of Section 491.015 which provides that "evidence of specific instances of the complaining witness' prior sexual conduct or the absence of such instances or conduct is inadmissible * * *." Defendant does not contest that proposition, but he nevertheless insists that the evidence here in question is admissible under a statutory exception, Sec. 491.015–1(3), which permits evidence of prior sexual conduct which constitutes "[e]vidence of immediate surrounding circumstances of the alleged crime." Although there are numerous "rape shield" statutes in other states, the statutory language of exception just quoted seems to be unique to Missouri and has never as yet been subjected to appellate scrutiny in this state.

This language has however been discussed in an article by Amburg and Rechtin, *Rape Evidence Reform in Missouri: A Remedy for the Adverse Impact of Evidentiary Rules on Rape Victims*, 22 St. Louis U.L.J. 367 (1978). That article at page 376 quotes the sponsor of this legislation as having stated in an interview "that this exception was intended to protect defendants from false claims of rape by prostitutes and young women who had participated in group sexual intercourse prior to the alleged rape." The authors at page 378 further comment that "[t]he 'immediate surrounding circumstances' clause further protects a defendant from false charges of rape by a complaining witness who actively participated sexually with the defendant but claimed rape. Moreover, this clause may even unfairly prejudice the state's case by permitting an argument for victim precipitation, one form of which is defined as the rapist's interpretation of the victim's non-verbal behavior as communicative of an invitation to sexual intercourse. The immediate surrounding circumstances may clearly be relevant to the issue of consent and must be admitted in fairness to the defendant where they tend to make consent more probable * * *."

It is not necessary to expand beyond the foregoing illustrations and undertake an all inclusive definition of what is covered by the "immediate surrounding circumstances" exception. It suffices here to hold merely that the evidence in this case does not bring it within the furthest permissible stretch of that exception.

In applying the exception, attention must be given to two very pertinent factors, one being the time factor and the other being the relationship if any between the alleged rapist and the alleged victim. As to the latter factor, prosecutrix and defendant were strangers, with no prior relationship. As to the time factor, there is a wide gap of time between the assault in question, which occurred August 19, 1978, and the prosecutrix's last previous sexual act, which occurred (according to the statement which defendant argues should have been permitted in evidence) in the second week of May. In the meantime, the prosecutrix had experienced two menstrual cycles, which rendered the possibility of pregnancy if not wholly impossible, at least extremely unlikely.

Although defendant argues that the prosecutrix may have been motivated to lie about the alleged rape due to her fear of pregnancy and her disturbance about how to make explanation to her parents, the record is void of any evidence of any such fear or emotional upset on the part of the prosecutrix. Further for consideration is the rather obvious fact that the prosecutrix had been sexually assaulted by force. Beyond doubt, someone had sexual intercourse with her on August 19, and defendant does not even claim that occurred by consent. The whole thrust of his defense was that he was not in Kirksville at that time, and he had been misidentified as the rapist. To all this must be added the additional element that the record fails to show that, at the time of trial which occurred nine months after the alleged rape, the prosecutrix was then or had she ever been pregnant.[1] Everything considered, the evidence sought to be introduced by defendant was not part of the "immediate surrounding circumstances."

In connection with this point, defendant places his principal reliance upon *State v. DeLawder*, 28 Md.App. 212, 344 A.2d 446 (1975). In that case a prosecutrix had stated to her best friend before the time of the alleged rape that she was pregnant and that the father was one of two young men. The alleged rapist (not one of the two men named by the prosecutrix in the conversation with her friend) upon his trial tried to introduce that statement into evidence and also evidence as to the very strict attitude of the prosecutrix's mother with respect to morals, as tending to show a motive by the prosecutrix to make a false accusation of rape. The Maryland court held that under those circumstances the defendant had a constitutional right to engage in the cross-examination and rebuttal sought as a part of the guarantee under the Sixth Amendment of the right of confrontation.

*DeLawder* is factually dissimilar from the present case. Moreover *DeLawder* rests upon constitutional grounds; whereas defendant here did not preserve any constitutional ground of objection in the trial court and he does not set forth any constitutional ground in his Point Relied Upon in this court.

Section 491.015, like rape shield statutes elsewhere, raises serious constitutional questions. *See* for example, 22 St. Louis U.L.J. 367, *supra*; Tanford and Bocchino, *Rape Victim Shield Laws and the Sixth Amendment*, 128 U.Pa.L.Rev. 544 (1980); Berger, *Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom*, 77 Col.L.Rev. 1 (1977); Rudstein, *Rape Shield Laws: Some Constitutional Problems*, 18 Wm. & Mary L.Rev. 1 (1976).[2] However, those issues are not appropriate for consideration in this case and in the exercise of the discretion accorded by Rule 30.20, we decline to consider them as plain error, for the following reasons: (1) the constitutional issues were not preserved at trial, nor raised in this court nor briefed here by defendant; (2) the state has not had opportunity to brief those issues; (3) the constitutionality of Sec. 491.015 cannot be determined by this court; and (4) to the extent that any other constitutional aspects are open to this court under Article V, Sec. 3 of the Missouri Constitution (and with respect to any non-constitutional claim based on relevancy generally), we perceive no impairment of defendant's rights in light of the facts of this case.

Defendant's second point is rejected.

### III.

Defendant, as a preliminary matter before trial, moved to suppress the prosecutrix's testimony identifying defendant as the rapist. He submitted the following evidence in support of the motion. The day following the rape, prosecutrix gave a

---

1. During colloquy before the trial court outside of the hearing of the jury, the prosecuting attorney stated: "The girl [the prosecutrix] has never been pregnant, I'm sure Mr. Mayberry [defense counsel] knows that." That statement by the prosecuting attorney was not denied or challenged in any way by defense counsel.

2. The constitutional issues are presently pending before the Missouri Supreme Court.

statement to the police, in which she described the perpetrator as being 5 feet 7 inches tall and weighing 145 pounds (defendant was 6 feet 2 inches tall and weighed 165 pounds). Two days later, the police presented ten black and white pictures to the prosecutrix, of which one was a photograph of defendant. Prosecutrix at that time was unable to make any identification. The police then came back and displayed the same ten pictures together with one additional color picture of defendant slightly larger than the other ten pictures and displayed those eleven pictures to her. Upon viewing this second presentation, prosecutrix identified the color picture as being one of the three young men who had come to her house on the evening of August 17.

The police then came back a third time and added to the first eleven pictures, a 12th, being a picture of defendant's brother. On viewing all of the pictures on this occasion, prosecutrix for the first time identified defendant as the rapist. The police then made a final presentation of pictures adding still another picture of defendant's brother, and this time prosecutrix again made a positive identification of defendant as the rapist. A line up was held soon thereafter, at which prosecutrix identified defendant as the rapist.

The trial court after hearing the foregoing evidence ruled that the manner in which the pictures had been presented was unduly suggestive, and ruled that no evidence would be permitted as to the out of court identification. On the other hand, the court ruled that in-court identification by the witness would be permitted. At trial, prosecutrix was asked if she could identify the person who had committed the rape, and she, unqualifiedly and unhesitatingly, pointed out defendant.

■ Defendant contends that the in-court identification was so tainted by the unduly suggestive out of court identification that prosecutrix's in-court identification should not have been permitted. This contention runs afoul of authoritative precedent to the contrary. The controlling

decisions hold that even despite oversuggestiveness by police in the course of their investigation, in-court identification does not automatically become inadmissible, but rather all factors of the situation are to be weighed together. Thus in *State v. Higgins*, 592 S.W.2d 151, 160 (Mo. banc 1979), it is held:

"Assuming arguendo the photo spread techniques were impermissibly suggestive, we find no want of due process in the trial court's rulings on the identification testimony. Reliability, not suggestiveness, 'is the linchpin in determining the admissibility of identification testimony . . .' *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); *State v. Carter*, 572 S.W.2d 430, 435 (Mo. banc 1978) and reliability of the in-court identification testimony is to be assessed under the 'totality of the circumstances.' . . ."

To like effect are *State v. Kent*, KCD30336, decided concurrently herewith; *State v. Dickerson*, 568 S.W.2d 559 (Mo.App.1978). The prosecutrix here had excellent opportunity to observe the one who was committing rape upon her, and her in-court identification was unequivocal. The trial court committed no error in permitting her in-court identification. *State v. Csolak*, 571 S.W.2d 118 (Mo.App.1978).

Defendant's third point is rejected.

### IV.

Defendant tendered but the trial court refused a special instruction concerning the jury's consideration of the identification testimony. This tendered instruction was patterned after an instruction adopted in the case of *United States v. Telfaire*, 469 F.2d 552 (D.C. Cir. 1972).

■ The requested instruction does not appear among the Missouri Approved Instructions—Criminal. The existing approved instructions do adequately cover the question of how the jury is to deal with identification testimony. Additional instructions on that subject are unnecessary, and the requested instruction here was

properly refused. *State v. Higgins, supra; State v. Quinn,* 594 S.W.2d 599 (Mo. banc 1980).

Defendant's fourth point is overruled.

Affirmed.

All concur.